BANK ONE, TEXAS, N.A., Formerly
Deposit Insurance Bridge Bank,
N.A., Petitioner,

v.

Robert L. MOODY, Jr., Respondent.

No. D–0722.

Supreme Court of Texas.

April 15, 1992.

Rehearing Overruled June 24, 1992.

J. Michael Fieglein, Galveston, for petitioner.

Andrew J. Mytelka, Arnold G. Polanco, for respondent.

## OPINION

COOK, Justice.

This case presents a question of the appropriate interpretation and application of the *Craddock* test for granting a new trial after a default judgment. *Craddock v. Sunshine Bus Lines*, 134 Tex. 388, 133 S.W.2d 124 (1939).

Robert L. Moody served a writ of garnishment on Bank One.[1] After Bank One failed to file an answer, Moody obtained a default judgment for $82,000, plus $1,000 for attorney's fees, interest and costs. Bank One then filed a motion for new trial that was overruled by operation of law. The court of appeals affirmed the trial court. 800 S.W.2d 280. We hold that the court of appeals improperly treated the *Craddock* test as having four independent elements, and we hold that a mistake of law is one type of mistake that may satisfy

---

1. Bank One, Texas, N.A. was operating as Deposit Insurance Bridge Bank, N.A., until after the default judgment was rendered. "Bank One" refers to both the current Bank One and its predecessor, Deposit Insurance Bridge Bank.

the first element of the three element *Craddock* test. Therefore, we reverse the judgment of the court of appeals and remand the cause to the trial court for trial.

In an earlier proceeding, Moody obtained a judgment against Joe Richardson and Apex Natural Resources, Inc. for $79,000 and $3,000 in attorney's fees, costs, and post-judgment interest. Moody then filed an application for writ of garnishment to garnish accounts held by Joe Richardson and Apex Natural Resources, Inc. at Bank One. The writ of garnishment was served on Bank One and was routed to Robin Kane, who was branch president of Bank One. Kane instructed bank personnel to identify and freeze all accounts held by Joe Richardson and Apex Natural Resources, Inc. There were three accounts that contained a total of $27.57. After Kane did not hear anything further from the court or Moody, he instructed bank personnel to call the court to determine what to do with the funds. Subsequently, Bank One submitted a check for $27.57 to the clerk of the court. The record is not clear as to exactly where the check was sent. Moody received the check from the court on the day the court granted default judgment.

At the hearing on the motion for new trial, Kane testified that although the writ required a written answer, he thought Bank One had done what the writ of garnishment required and that Bank One had followed the same procedure when it received writs of garnishment in the past. Kane also testified he did not file an answer because he believed Bank One had complied with the writ of garnishment.

The court of appeals held: (1) that Bank One's failure to answer was intentional; (2) that the failure to answer was due to a mistake; (3) that Bank One had a meritorious defense; and (4) that granting a new trial would not occasion delay or otherwise work an injury to Moody. 800 S.W.2d at 281–82. The court of appeals affirmed the trial court because the first element of the four element *Craddock* test used by the court of appeals was not met. The court of appeals held Bank One satisfied the other

three elements of the four part *Craddock* test used by the court of appeals.

## I.

In *Craddock v. Sunshine Bus Lines,* this court held that a trial court's discretion in determining whether to grant a new trial after the court renders a default judgment must be referenced to a guiding principle or rule. 133 S.W.2d at 126. The court then announced the guiding rule as follows:

A default judgment should be set aside and a new trial ordered in any case in which the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident; provided the motion for a new trial sets up a meritorious defense and is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff.

133 S.W.2d at 126. The court of appeals improperly broke this test down into four elements as follows:

(1) that the failure to answer was not intentional, or the result of conscious indifference, (2) that the failure to answer was due to mistake or an accident, (3) that the defendant has a meritorious defense; and (4) that the defendant's motion was filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff.

800 S.W.2d at 281.

The requirement that the failure to answer be due to an accident or mistake should not be treated as a separate element. It is part of the first element of the three element test. Dividing the *Craddock* test into four elements is contrary to the way this court has consistently interpreted the test and changes the application of the test by improperly reading out the potential for a mistake of law to satisfy the test.

■ This court has consistently interpreted the *Craddock* test as having the following three elements: (1) the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due

to a mistake or an accident; provided (2) the motion for a new trial sets up a meritorious defense; and (3) is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff.[2] A three part test is consistent with the initial purpose of the *Craddock* test as well as being consistent with subsequent interpretation.

The development of the *Craddock* test indicates its initial purpose. The *Craddock* court did not create the standard for guiding discretion on new trial determinations. The court only "reannounce[d], in slightly changed language," the existing rule which was based on *Dowell v. Winters*, 20 Tex. 793 (1858). *Craddock*, 133 S.W.2d at 126. Dowell made a mistake of law and as a result failed to file a proper answer to Winter's suit against him. The *Dowell* court ordered a new trial after a default judgment when the court determined (1) that there was some excuse for not answering on time, (2) that there was a meritorious defense, and (3) that the trial was not delayed. 20 Tex. at 797.

The first element of the *Craddock* test just refines the excuse requirement of the earlier *Dowell* standard.[3] The modified standard provides that when considering whether a defendant has a sufficient excuse for not answering on time, the court considers whether the failure to answer was intentional or due to conscious indifference rather than being due to a mistake or accident. *Ward v. Nava*, 488 S.W.2d 736, 738 (Tex.1973). The court's application of its rule in *Craddock* to the facts of *Craddock* further clarifies the rule. The *Craddock* court used the presence of a mistake to preclude the presence of an intentional act. 133 S.W.2d at 126.

The court of appeals offers no authority for splitting the *Craddock* test up into four elements. None of our cases support the proposition that the *Craddock* standard is a four part test.[4] Nor have we found any court of appeals opinion, other than that of the court of appeals in this case, that supports the proposition that the *Craddock* test has four parts.

Further, the application and meaning of the *Craddock* test are changed if the test is treated as having four parts. Under the correct interpretation of *Craddock*, a mistake or accident may negate any intention not to file an answer. However, if the test is interpreted as having four elements, a mistake or accident cannot negate the intent not to file an answer. This is because, under a four part test, the requirement that the failure to answer not be intentional or due to conscious disregard and the requirement that the failure to answer be due to an accident or mistake must be met independently.

This court was faced with a mistake of law in *Angelo v. Champion Restaurant Equipment Co.*, 713 S.W.2d 96 (Tex.1986). *See also Gotcher v. Barnett*, 757 S.W.2d 398 (Tex.App.—Houston [14th Dist.] 1988, no writ) (mistake of law negated intention not to file). After Champion filed suit against Angelo, Angelo paid the claim in full but did not file an answer to the suit. Angelo mistakenly believed that paying the underlying claim was a sufficient response to the suit and that no answer was required. The trial court granted a default judgment and overruled the motion for new trial. This court and the court of appeals agreed that the "failure to answer was due to an accident or mistake." *Angelo*, 713 S.W.2d at 97. "Angelo's failure to answer was not caused by conscious indifference but by the belief that payment according to the agreed schedule would cause the suit to be dismissed." *Id.*

---

2. *See, e.g., Lopez v. Lopez,* 757 S.W.2d 721 (Tex. 1988); *Cliff v. Huggins,* 724 S.W.2d 778 (Tex. 1987); *Angelo v. Champion Restaurant Equipment Co.,* 713 S.W.2d 96 (Tex.1986); *Guaranty County Mutual Ins. Co. v. Reyna,* 709 S.W.2d 647 (Tex.1986); *Grissom v. Watson,* 704 S.W.2d 325 (Tex.1986); *Strackbein v. Prewitt,* 671 S.W.2d 37 (Tex.1984); *Guaranty Bank v. Thompson,* 632 S.W.2d 338 (Tex.1982); *United Beef Producers,*

*Inc. v. Lookingbill,* 532 S.W.2d 958 (Tex.1976); *Ward v. Nava,* 488 S.W.2d 736 (Tex.1973); *Ivy v. Carrell,* 407 S.W.2d 212 (Tex.1966).

3. This court is not suggesting a return to the broad excuse language of *Dowell.*

4. *See supra* note 2 and accompanying text.

*Angelo* presents the same conflict as this case. The court in *Angelo* could have just as easily said that Angelo intended not to file an answer. However, the mistake of law was sufficient to negate the intent not to file an answer. Bank One did not file an answer because it mistakenly believed that freezing the accounts and submitting a check for the balance in the accounts to the court was a sufficient answer. This meets the first element of the *Craddock* test.

Most applications of the *Craddock* test focus on whether the failure to answer was intentional or due to conscious indifference. *See, e.g., Cliff v. Huggins,* 724 S.W.2d 778, 779 (Tex.1987); *Strackbein v. Prewitt,* 671 S.W.2d 37, 38–39 (Tex.1984). The accident or mistake segment is only considered when, on the facts of a particular case, an accident or mistake may negate intentional or consciously indifferent conduct. *See, e.g., Strackbein,* 671 S.W.2d at 38–39; *State Farm Life Ins. Co. v. Mosharaf,* 794 S.W.2d 578, 584 (Tex.App.—Houston [1st Dist.] 1990, writ denied); *Guardsman Life Ins. Co. v. Andrade,* 745 S.W.2d 404, 405 (Tex.App.—Houston [1st Dist.] 1987, writ denied). The requirement of an accident or mistake has not been treated as a separate element. Consistent with this treatment, we hold that the *Craddock* test has three elements as set out above.

## II.

This case also presents the question whether a mistake of law is one of the mistakes that may satisfy the first element of the *Craddock* test. The *Craddock* test was a restatement of the standard initially devised in *Dowell v. Winters,* 20 Tex. 793 (1858). *Craddock,* 133 S.W.2d at 126. Dowell made a mistake of law[5] and as a result failed to file a proper answer to Winter's suit against him. *Dowell,* 20 Tex. at 794. The court, enunciating a standard that later became the *Craddock* test, stat-

ed that a mistake of law regarding the appropriate response to a petition is a sufficient excuse to warrant a new trial after a default judgment. *Id.* at 797–98. Therefore, the first element of the *Craddock* test is derived from a case where a mistake of law was the reason an answer was not filed.

■ Subsequent to *Craddock,* courts have held that a mistake of law satisfies the mistake segment of the first element of the *Craddock* test. *See, e.g., Angelo,* 713 S.W.2d at 97 (mistaken belief that paying underlying claim was sufficient answer); *Texas State Bd. of Pharmacy v. Martinez,* 658 S.W.2d 277, 280–81 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.) (mistaken belief that exclusive venue rested in county other than the county of suit). Therefore, we hold that a mistake of law may be sufficient to satisfy the first element of the three element *Craddock* test.

The *Craddock* test is well established in our jurisprudence. A mistake of law is one of the excuses that are sufficient to meet the requirements of *Craddock.*[6] This is not to say that every act of a defendant that could be characterized as a mistake of law is a sufficient excuse. *See, e.g., Carey Crutcher, Inc. v. Mid–Coast Diesel Services, Inc.,* 725 S.W.2d 500, 502 (Tex.App.—Corpus Christi 1987, no writ) (attorney did not understand effect of bankruptcy stay); *First National Bank of Bryan v. Peterson,* 709 S.W.2d 276, 279 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (response to writ of garnishment; froze accounts but did not submit funds to the court); *Butler v. Dal Tex Mach. & Tool Co., Inc.,* 627 S.W.2d 258, 260 (Tex.App.—Fort Worth 1982, no writ) (read but did not understand citation; did nothing).

■ Robin Kane, branch president of Bank One, did not file a written answer to Winters' suit against him even though the court had not ruled on the injunction.

---

5. Dowell had filed a separate suit against Winters claiming that Dowell owed Winters nothing but Winters owed Dowell a large sum of money. In that suit, Dowell requested an injunction preventing Winters from pursuing the suit in which the court granted the default judgment. Dowell thought the injunction requested in his suit against Winters was a sufficient answer to

6. However, this holding should not be interpreted as condoning the mistake of law made by Bank One or the mistake of law made by any other defendant.

the writ because he thought that it was a sufficient answer to freeze the subject accounts and tender the balance of the accounts to the court issuing the writ. Moody did not controvert this statement of Kane's belief. Looking at the facts most favorable to Moody, Kane read and understood the writ of garnishment. However, that does not change the fact that Kane thought what he did was the answer that the writ required. This satisfies the first element of the *Craddock* test.

### III.

We hold that the *Craddock* test has three elements as set out above and that a mistake of law may satisfy the first element of the *Craddock* test. When all three elements of the *Craddock* test are met, the trial court abuses its discretion by not granting a new trial.[7] *See Strackbein*, 671 S.W.2d at 38. The court of appeals held that Bank One satisfied the second two elements of the *Craddock* test and those elements were not an issue in this court. Having held that the first element is satisfied, we reverse the judgment of the court of appeals and remand to the trial court for a determination of Moody's reasonable costs in obtaining the default judgment and then for trial on the merits. However, Bank One must follow through on its offer to reimburse Moody for his reasonable costs in obtaining the default judgment.

Dissenting opinion by GONZALEZ, J., joined by MAUZY and DOGGETT, JJ.

GONZALEZ, Justice, dissenting.

I agree with both the trial court's and the court of appeals' conclusion that, under the *Craddock v. Sunshine Bus Lines* test, there is no basis to set aside the default judgment, because the trial court did not clearly abuse its discretion in overruling (by operation of law) Bank One's motion

for new trial. To the contrary, the record supports the trial court's action.

The writ of garnishment served on the Bank explicitly directed it to file a written answer within 20 days in accordance with the Texas Rules of Civil Procedure, setting forth exactly what had to be in the Bank's answer. The applicable rule provides that:

[i]f the garnishee fails to file an answer to the writ of garnishment at or before the time directed in the writ, it shall be lawful for the court ... to render a judgment by default ...

*See* TEX.R.CIV.P. 667.

The Bank erred when it consciously decided to ignore the legal process by not filing a reply, choosing instead to freeze the affected account and tender a check to the court. On previous occasions, the Bank had similarly ignored the explicit procedural directives regarding garnishments. Its branch president testified that he believed that the action he took was legally proper since he had responded to previous writs by simply freezing the affected accounts and, in doing so, had never encountered a legal problem. But a party's practice, no matter how well established or well intended, should not be permitted to supplant a conflicting legal directive provided by the Texas Rules of Civil Procedure. Allowing this type of "mistake of law" to defeat default judgments severely weakens the legal process. Future defendants may be able to defeat no-answer default judgments by merely asserting that their failure to answer was a mistake of law attributable to some local practice that had always worked before.

The real question before the court, however, is not whether *the Bank* committed a mistake in answering the writ of garnishment that caused the default judgment. The Bank obviously did err in "answering" the writ by freezing the accounts and tendering a check to the court made out to the State of Texas. The question is did *the trial court* abuse its discretion by finding

---

7. "While trial courts have some measure of discretion in the matter, as, in truth, they have in all cases governed by equitable principles, it is not an unbridled discretion to decide cases as they might deem proper, without reference to

any guiding rule or principle." *Craddock*, 133 S.W.2d at 126. The three elements of the *Craddock* test define the bounds of a trial court's discretion.

that the Bank's mistake failed to negate conscious indifference. In reviewing the trial court's decision, we should reverse the judgment and order a new trial only if the record reveals that the court clearly abused its discretion in overruling the Bank's motion for new trial. This court previously has noted that, when applying the abuse of discretion standard, the reviewing court's inquiry should focus on whether the trial court "acted without reference to any guiding rules and principles." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986), *citing Craddock v. Sunshine Bus Lines*, 133 S.W.2d 124, 126 (Tex.1939). "Another way of stating the test is whether the act was arbitrary or unreasonable. The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred." (citations omitted). *Downer* at 242. A court applying the *Craddock* test may have abused its discretion if it fails to grant a new trial when the record clearly indicates that the defendant's mistake negated intent or conscious. indifference.

Conscious indifference means "a failure to take some action which would seem indicated to a person of reasonable sensibilities under the same circumstances." *Johnson v. Edmonds*, 712 S.W.2d 651, 652–53 (Tex. App.—Fort Worth 1986, no writ). The testimony of the Bank's branch president, who received the writ of garnishment, indicates that he may have acted unreasonably in light of the writ's language. He testified as follows:

Lawyer: Would you—if you could look at the document where it says there, "You are hereby commanded by filing a written answer before said Court," at such and such a time. You did see that, didn't you?

President: Yes, I did.

Lawyer: Did you see that at the time this document was handed to you?

President: No.

Lawyer: Did you read it?

President: I don't remember if I read the entire contents of this document.

The trial court could have reasonably concluded that the Bank's branch president did read all of the writ's language. The trial court, within its discretion, found that the branch president's mistake did not negate conscious indifference. *See Carey Crutcher, Inc. v. Mid–Coast Diesel Services, Inc.*, 725 S.W.2d 500, 502 (Tex.App.—Corpus Christi 1987, no writ) (mistake of law did not negate conscious indifference). Thus, the trial court did not abuse its discretion by overruling the motion for new trial, because the record supports the court's action.

The case before us is almost identical to *First Nat'l Bank of Bryan v. Peterson*, 709 S.W.2d 276, 280 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); but the *Peterson* court reached a result opposite from the one the court reaches today. In *Peterson*, the court of appeals affirmed the trial court's overruling of the bank's motion for new trial, because the record indicated that the court had not clearly abused its discretion. The court also concluded that:

The fact that [the bank's] lack of action was allegedly due to its mistaken reliance on an informal local practice which admittedly did not require strict compliance with the rules governing garnishment procedures does not excuse their total lack of action on the matter.

*Id.*

This conclusion reveals the problem with distinguishing between misfeasance and nonfeasance, which the court's opinion now would require, in deciding whether a mistake of law satisfied the first element of the *Craddock* test. The *Peterson* court ruled that freezing accounts demonstrated the bank's "total lack of action," that is, its nonfeasance; but in the instant case, the court holds that freezing accounts (and tendering a check) is some action, though insufficient to answer the writ. I am concerned that creating a misfeasance/nonfeasance distinction for determining the merit of mistake of law claims will create further

confusion in an inherently difficult area of the law. The *Craddock* test does not call for different treatment of mistakes of law and mistakes of fact. It merely asks whether the defendant's mistake of law or fact negates intent or conscious indifference. Introducing an intermediate analysis to mistake of law questions is unnecessary.

The record in this case contains no indication that the trial court acted in an arbitrary or capricious manner when it chose to overrule the Bank's motion for new trial. Regrettably, this would force a substantial loss upon the Bank for a debt incurred by another. Nevertheless, the judgment should stand, because the record supports the trial court's action.

For the above reasons, I dissent.

MAUZY and DOGGETT, JJ., join in this opinion.