Jerry Bayne Truett and Dava Beth Truett v. IBAT Bond Trust










 





IN THE
TENTH COURT OF APPEALS
 

No. 10-99-004-CV

     JERRY BAYNE TRUETT
                                                                         Appellant
     v.

     IBAT BOND TRUST,
                                                                         Appellee
 

From the 87th District Court
Limestone County, Texas
Trial Court # 25,335-B
                                                                                                                
                                                                                                            
O P I N I O N
                                                                                                                
   
     IBAT Bond Trust (IBAT) sued Jerry Bayne Truett and his wife Dava Beth Truett on
theories of conversion, theft and breach of contract. Upon the defendants’ failure to answer,
IBAT obtained a default judgment against the Truetts for $734,564.36 plus attorney’s fees. 
Jerry Bayne Truett (hereinafter “Truett”) filed a timely motion for new trial which the trial
court subsequently overruled. Truett then brought this appeal. We will affirm.
 

FACTUAL AND PROCEDURAL HISTORY
      IBAT, a fidelity bond insurer, issued a bond to the First State Bank of Kosse, Texas
insuring the Bank against certain losses caused by the conduct of its employees. On August
18, 1998, the Bank submitted a sworn proof of loss to IBAT seeking recovery for losses
allegedly resulting from the conduct of the Truetts. IBAT paid the claim, and the Bank
assigned to IBAT its right to all causes of action then owned against the Truetts.
      IBAT subsequently sued the Truetts for $734,564.36 plus attorney’s fees, representing the
amount IBAT paid to the Bank under the bond agreement. The original petition was filed on
September 4, 1998 and the return of service was dated September 9. On October 20, there
being no answer on file, the District Court rendered default judgment against the Truetts for
$734,564.36 plus $6,804.27 in attorney’s fees. 
      On November 20, Truett filed a timely motion for new trial asserting that he satisfied the
elements necessary to set aside a default judgment enunciated by the Supreme Court in
Craddock v. Sunshine Bus Lines, Inc., 134 Tex. 388, 133 S.W.2d 124 (1939). Truett attached
an affidavit to his motion, which recited the following operative facts:
I was served with a citation and Plaintiff’s original Petition in cause
number 25,335-B on the docket of the District Court of Limestone County,
Texas, which is styled IBAT Bond Trust v. Dava Beth Truett and Jerry Bayne
Truett. I was served with these papers while I was confined in jail in
McLennan County, Texas. I did not think that I had to do anything to defend
this civil suit since I was confined in jail. I did not think that any deadlines
would run until I was released from jail . . . . I am not knowledgeable about
the law. I have never been involved in a court proceeding of this nature
before: I simply made a mistake and did not hire an attorney to defend this
case. It was not my intention to ignore this lawsuit, but it was due to an
accident or mistake on my part.
I have never worked for a bank. I have never embezzled money from
any bank or any other business.
My defense to the lawsuit would be that I have never taken any money
from the bank in question, nor had [sic] I ever participated in any way in
taking money from that bank. 
      
      On December 21, the District Court held a hearing on Truett’s motion for new trial. In an 
attempt to controvert the facts asserted in Truett’s affidavit, IBAT introduced certified copies
of United States District Court records consisting of two arrest warrants, two orders setting
conditions for release, and two appearance bonds. The records indicate that Truett was
initially arrested on September 8, released from jail on September 9 (the day he was served
with citation), and not reconfined until October 13, eight days after his answer was due. At
the conclusion of the hearing, the trial court denied Truett’s motion for new trial. By four
points of error, Truett contends the trial court erred in so doing.



STANDARD OF REVIEW
      A default judgment should be set aside in any case in which: (1) the failure of the
defendant to answer before judgment was not intentional or the result of conscious indifference
on his part, but was due to a mistake or accident; (2) provided that the motion for a new trial
sets up a meritorious defense and (3) is filed at a time when the granting thereof will occasion
no delay or otherwise work an injury to the plaintiff. Director, State Employees Worker’s
Compensation Div. v. Evans, 889 S.W.2d 266, 268 (Tex. 1994); Strackbein v. Pruett, 671
S.W. 2d 37, 38 (Tex. 1984); Craddock, 133 S.W.2d at 126. The grant or denial of a motion
for new trial rests with the sound discretion of the trial court and the court’s ruling will not be
disturbed on appeal absent an abuse of that discretion. Cliff v. Huggins, 724 S.W.2d 778, 778-79 (Tex. 1987). The proper inquiry is whether the trial court acted “without reference to any
guiding rules or principles.” Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985), cert. denied, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986), citing
Craddock, 133 S.W.2d at 126. However, when all elements of the Craddock test are met, a
trial court abuses its discretion in denying the motion for new trial. Director, 889 S.W.2d at
268.
ADMISSIBILITY OF THE DISTRICT COURT RECORDS
      In his first issue, Truett contends the trial court erred in considering the United States
District Court records offered by IBAT to contradict the factual assertions contained in Truett’s
affidavit. At the hearing on Truett’s motion for new trial, Truett objected to the admission of
the court records on relevance grounds. IBAT responded that the documents were offered to
controvert the statements in Truett’s affidavit that he was confined for the entire period during
which he could have filed an answer, rendering them relevant to the issue of whether the
failure to answer was intentional or the result of conscious indifference. The court overruled
Truett’s objection and admitted the records. On appeal, Truett argues that the records could
not have been relevant to controvert such a statement because such a statement does not appear
in the affidavit.
      Evidence is relevant if it has “any tendency to make the existence of any fact that is of
consequence to the determination of the action more probable or less probable than it would be
without the evidence.” Tex. R. Evid. 401. The decision to admit or exclude evidence is
addressed to the sound discretion of the trial court. Gee v. Liberty Mut. Fire Ins. Co. 765
S.W.2d 394, 396 (Tex.1989). In Strackbein v. Prewitt, the Supreme Court provided
guidelines for considering motions for new trial based on the Craddock factors. Strackbein v.
Prewitt, 671 S.W.2d 37, 38-39 (Tex. 1984). The court held: “[w]here factual allegations in a
movant’s affidavits are not controverted, a conscious indifference question must be determined
in the same manner as a claim of meritorious defense. It is sufficient that the movant’s motion
and affidavits set forth facts which, if true, would negate intentional or consciously indifferent
conduct.” Id. The court further opined that “the trial judge, in considering the motion for
new trial, could look only to the record before him at that time.” Id. at 38. Because there was
no record of the hearing on the motion for new trial in Strackbein, the only evidence from
which the court of appeals could determine error was the motion itself and the supporting
affidavits. Id. The Supreme Court has since clarified the scope of review contemplated by
Strackbein: 
If the factual assertions in the defendant’s affidavit are not controverted by
the plaintiff, the defendant satisfies his burden if his affidavit sets forth facts
that, if true, negate intentional or consciously indifferent conduct by the
defendant. In determining if the defendant’s factual assertions are
controverted, the court looks to all the evidence in the record.

Director, State Employees Worker’s Compensation Div. v. Evans, 889 S.W.2d 266, 268-69
(Tex. 1994) (emphasis added). Such evidence may include the motion for new trial and
supporting affidavit, any response and its controverting affidavit, and evidence introduced at
the hearing, including oral testimony and documentary exhibits. Id. at 269. 
      In this case, Truett’s affidavit recites that he was served while confined in jail, did not
think action was required during his confinement, and did not believe any deadlines would run
until his release. IBAT’s evidence regarding the dates of Truett’s confinement is germane to
the issue of whether his failure to answer was merely negligent or resulted from intentional or
consciously indifferent conduct. The trial court did not abuse its discretion in admitting or
considering such evidence. Truett’s first issue is overruled.
THE CRADDOCK TEST
      In issues two through four respectively, Truett contends that the trial court erred in
denying his motion for new trial because he met each element of the Craddock test. 
Specifically, Truett asserts that his affidavit sufficiently established (1) that his failure to file an
answer was not intentional or the result of conscious indifference but was due to a mistake, (2)
that he has a meritorious defense, and (3) that the grant of a new trial will occasion no delay or
otherwise work an injury to the plaintiff. See Craddock, 133 S.W.2d at 126.
      To satisfy the first prong of the Craddock test, a movant must negate the existence of
conscious indifference. Director, 889 S.W.2d at 268-69. Conscious indifference has been
defined as “a failure to take some action which would seem indicated to a person of reasonable
sensibilities under the same circumstances.” Bank One, Texas, N.A. v. Moody, 830 S.W.2d
81, 86 (Tex. 1992) (citing Johnson v. Edmonds, 712 S.W.2d 651, 652-53 (Tex. App.—Fort
Worth 1986, no writ). The inquiry must focus on “the knowledge and acts of the defendant”
in each case. Strackbein, 671 S.W.2d at 39.
      Truett’s affidavit states that it was not his intention to ignore the suit, but that his failure to
answer arose from his mistaken belief that the period for filing an answer would not run until
he was released from jail. He characterizes this error as a “mistake of law,” therefore
sufficient to negate conscious indifference under the Supreme Court’s holding in Bank One,
Texas, N.A. v. Moody, 830 S.W.2d 81, 84 (Tex. 1992).
      The plaintiff in Moody served a writ of garnishment on the defendant bank after obtaining
a judgment against one of the bank’s depositors. Id. at 82. In response to the writ, the bank
froze the depositor’s accounts but failed to file an answer to the writ. Id. The bank then
deposited the funds from the frozen accounts with the district court clerk. Id. The plaintiff
took a default judgment against the bank, which then filed a motion for new trial. Id. At the
hearing, the bank’s president testified that his failure to answer the writ was due entirely to his
belief that his actions were sufficient to comply with the writ. Id. The trial court denied the
bank’s motion for new trial, and the court of appeals affirmed. Id. The Supreme Court
determined that the president’s erroneous belief that his actions sufficiently answered the writ
constituted a mistake of law. Id. at 84. The court held that “[a] mistake of law is one of the
excuses that are sufficient to meet the requirements of Craddock.” Id. However, the court
clarified its position by stating “[t]his is not to say that every act of a defendant that could be
characterized as a mistake of law is a sufficient excuse.” Id. (citing Carey Crutcher, Inc. v.
Mid-Coast Diesel Services, Inc., 725 S.W.2d 500, 502 (Tex. App.—Corpus Christi 1987, no
writ) (attorney did not understand effect of bankruptcy stay); First National Bank of Bryan v.
Peterson, 709 S.W.2d 276, 279 (Tex. App.—Houston [14th Dist.] 1986, writ ref’d n.r.e.)
(defendant bank froze accounts but did not submit funds therein to the court); Butler v. Dal Tex
Mach. & Tool Co., 627 S.W.2d 258, 260 (Tex. App.—Fort Worth 1982, no writ) (defendant
read citation but did not understand its implications and did nothing)). The court concluded
that the president “thought what he did was the answer that the writ required” and thus
“satisfie[d] the first element of the Craddock test.” Id. at 85.
      Unlike the defendant in Moody, Truett does not contend that he believed his actions (or
lack thereof) constituted a sufficient answer to the lawsuit. Although Truett’s belief that his
confinement tolled the answer period could be characterized as a mistake of law, it is not the
type of mistake that negates conscious indifference. Truett does not dispute the fact that he
took no action whatsoever in response to the citation, nor did he ever inquire as to whether any
action was necessary. Based on the record before it, the trial court could have appropriately
concluded that Truett’s conscious decision to ignore this lawsuit, even if based on a mistake of
law, went beyond mere negligence. The trial court therefore did not abuse its discretion in
denying Truett’s motion for new trial. Because the trial court could have properly based its
decision on Truett’s failure to negate conscious indifference, we need not address whether
Truett established a meritorious defense or established that the granting of a new trial would
occasion no delay or injury to the plaintiff.
      The judgment of the trial court is affirmed.
 
 
                                                                               REX D. DAVIS 
 Chief Justice


Before Chief Justice Davis
      Justice Vance, and
      Justice Gray
Affirmed
Opinion delivered and filed June 21, 2000
Do not publish



 After the objection was overruled, Wilson said that he sent a
deputy to Madison County to transport Green to the Leon County jail, where he and Ranger
Connell briefly talked with him and Connell then obtained the confession. Green's eighth point
is based on the overruling of his hearsay objection.
          Sheriff Wilson's testimony related hearsay within hearsay: He was told by the Madison
County Sheriff's office that Green said he wanted to talk to him. Double hearsay is admissible,
however, if each part of the combined statements fit within an exception to the hearsay rule. Tex.
R. Crim. Evid. 805. One of the exceptions in Rule 803 is for a statement of the declarant's
present state of mind—usually of his intent or plan—offered to prove that he subsequently acted
in accordance with his state of mind. Id. at 803(3). This exception is widely recognized by Texas
courts and remains undisturbed by the Texas evidentiary rules. S. Goode, O. Wellborn & M.
Sharlot, Guide To The Texas Rules Of Evidence: Civil And Criminal § 803.7 (Texas
Practice 1988) [hereinafter Texas Practice]. In fact, Texas precedent allows state-of-mind
declarations to be admitted to prove the joint conduct of the declarant and another. Porter v.
State, 86 Tex. Crim. 23, 215 S.W. 201, 210-11 (1919) (Morrow, J., concurring). Rule 803(3)
should, therefore, be interpreted as permitting this practice. Texas Practice § 803.7.
          The Rule 803(3) exception is applicable here because the declaration of the Madison
County Sheriff's deputy to Sheriff Wilson and Green's declaration both fit within the exception. 
Each declaration is admissible to prove that Sheriff Wilson, the Madison County Sheriff's office,
and Green acted jointly in conformance with the stated intent or plan of future conduct. See
Porter, 215 S.W. at 210-11.
          Assuming, however, that the court erred when it admitted Wilson's testimony over the
hearsay objection, the question is whether it would be harmless. See Tex. R. App. P. 81(b)(2). 
Green argues that the hearsay evidence was devastating to his claim that the confession was not
voluntarily given. He contends the jury would have reasonably believed he would not have sent
word that he wanted to talk to Sheriff Wilson unless he wanted to voluntarily confess. None of
the evidence relating to the voluntariness of the confession even intimated that it was obtained by
force, threats, promises, or other inducements. Rather, Green claimed that it was involuntarily
given because he did not knowingly and intelligently waive his rights. Under the circumstances,
admitting evidence that he asked to talk to Sheriff Wilson before confessing would have no logical
relationship to whether he knew and understood his rights before he confessed, and the jury would
not have interpreted it otherwise. Isolating the error against the record as a whole, we find that
the error would not have contributed to his guilt or punishment beyond a reasonable doubt. See
id.; Harris v. State, 790 S.W.2d 568, 587-88 (Tex. Crim. App. 1989). We overrule the eighth
point.
SUFFICIENCY OF THE EVIDENCE
          Green questions in point nine whether the evidence is sufficient to support his conviction. 
He argues that his confession did not show that he even committed a crime. His confession
contained these admissions:
          •        Frankie Green, his brother (Kenneth), and Nicholas Edwards discussed robbing
Westmoreland shortly before the crime occurred.
          •        Frankie and Edwards "decided to do it" on the night of the robbery.
          •        Frankie, Edwards, and Rodney Green (Frankie's younger brother) drove to
Westmoreland's home and waited for him to arrive; Frankie hid by the barn,
Edwards hid near the carport, and Rodney remained near the street as a "lookout."
          •        Westmoreland soon arrived and started walking toward his house carrying a sack,
at which time Edwards struck him in the head with a piece of pipe that Edwards
had brought with him from Kenneth's house.
          •        Edwards grabbed the sack from Westmoreland, which contained money, checks,
and food stamps, and ran to where Frankie was hiding; Frankie and Edwards then
ran from the scene looking for Rodney, who had apparently left.
          •        Frankie and Edwards left the sack taken from Westmoreland in an "old pickup
truck" when they could not find Rodney and then went to the "Flats" where they
met Kenneth.
          •        Edwards told Kenneth about the robbery, and Kenneth used his car to drive Frankie
and Edwards to get the sack from the old pickup.
          •        Kenneth then drove Frankie, Edwards, and Rodney to Frankie's house where they
counted and divided the money between the four of them.
          •        Frankie received $2,000 from the cash taken in the robbery.
Green contends that, other than his confession showing he knew about the robbery in advance and
was present at the scene, he never admitted doing any act that made him a party to the offense.
          A person is a party to an offense if, "acting with intent to promote or assist the commission
of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit
the offense." Tex. Penal Code Ann. §7.02(a)(2) (Vernon 1974). Presence of the accused at the
crime scene, coupled with proof of a prior agreement that the offense should be committed, is
evidence that the accused both encouraged and intended to promote the commission of the offense. 
Mayfield v. State, 716 S.W.2d 509, 514 (Tex. Crim. App. 1986). Green admitted discussing the
robbery with Edwards, agreeing with Edwards "to do it," hiding at the scene while Edwards
robbed Westmoreland, fleeing the scene with Edwards, hiding the money in the old pickup, and
receiving a large share of the loot. Thus, the admissions in his confession that he agreed to the
robbery and was present at its commission were, standing alone, sufficient to establish his criminal
responsibility as a party. See id. 
          Viewing the admissions and corroborating evidence in the light most favorable to the
verdict, we hold that any rational fact-finder could, beyond a reasonable doubt, find all of the
elements of the offense and Green's guilt as a party. Rivera v. State, 808 S.W.2d 80, 91 (Tex.
Crim. App. 1991), cert. denied, ——U.S.——, 112 S.Ct. 279, ——L.Ed.2d—— (1991); Tex.
Penal Code Ann. § 7.02(a)(2). Point nine is overruled.
CHARGE
          The charge on guilt-innocence contained this application paragraph:
Now, if you find from the evidence beyond a reasonable doubt that . . . Nicholas
Edwards did intentionally or knowingly, while in the course of committing theft of
property, and with intent to obtain and maintain control of said property, cause bodily
injury to Percy Westmoreland and said Percy Westmoreland was then and there older than
sixty-four years of age, and that . . . Frankie Green, acted with intent to promote or assist
the commission of the offense by Nicholas Edwards by encouraging, aiding, or attempting
to aid Nicholas Edwards to commit the aforesaid offense, by entering into an agreement
with Nicholas Edwards to rob Percy Westmoreland and being present when Nicholas
Edwards robbed Percy Westmoreland, or by fleeing the scene of the robbery and assisting
Nicholas Edwards in fleeing the scene of the robbery and the defendant, Frankie Green,
knew that Nicholas Edwards had robbed Percy Westmoreland, or entered into an
agreement with Nicholas Edwards to rob Percy Westmoreland and assisted Nicholas
Edwards in hiding the proceeds of the robbery[,] then you will find the defendant, Frankie
Green, guilty of aggravated robbery as charged in the indictment.

          Green's tenth and eleventh points question whether the evidence is sufficient to authorize
his conviction as a party on the three alternate theories outlined in the charge: (1) agreeing to the
robbery and then being present at the scene; (2) agreeing to rob Westmoreland and assisting
Edwards in fleeing the scene, knowing that the robbery had occurred; or (3) agreeing to rob
Westmoreland and, knowing that the crime had occurred, assisting Edwards in hiding the proceeds
of the robbery. Green admitted that he and Edwards agreed to the robbery—i.e., "to do it"—and
that he was present at the scene. As already noted, this was sufficient evidence from which the
jury could reasonably infer that he acted as a party. See Mayfield, 716 S.W.2d at 514.
          Moreover, circumstantial evidence will support a charge on parties, and the jury can
reasonably infer the accused's guilt as a party from such evidence. Beardsley v. State, 738
S.W.2d 681, 684 (Tex. Crim. App. 1987). In considering whether the accused acted as a party,
the court and jury may consider events occurring before, during, or after the offense. Id.
          Green admitted that he:
          •        discussed the robbery with Edwards before it occurred.
          •        agreed with Edwards "to do it" on the night of the robbery.
          •        accompanied Edwards to the scene and hid while they waited for Westmoreland to
arrive.
          •        accompanied Edwards from the scene after Edwards hit Westmoreland in the head
and took his money.
          •        accompanied Edwards while they hid the money in an old pickup truck.
          •        went with Edwards and Kenneth Green to retrieve the money from the old pickup.
          •        participated with Edwards, Kenneth, and Rodney Green in counting and dividing
the money.
          •        received $2,000 from the proceeds of the robbery.
          There was no direct evidence that Green assisted Edwards in fleeing the scene or hiding
the loot. The jury could reasonably infer from the circumstantial evidence, however, that Green
and Edwards acted under a common design and plan that included assisting each other in fleeing
the scene and hiding the loot in the old pickup. See Beardsley, 738 S.W.2d at 684. All three
alternate theories were therefore supported by the evidence. Points ten and eleven are overruled.
IMPEACHMENT
          Nicholas Edwards, who was called as a witness by the State, denied on direct examination
that Green knew Westmoreland was going to be robbed when they went to his home. The
prosecutor then asked him, "Do you remember telling me something different yesterday?" After
the court overruled defense objections that the prosecutor was engaging in improper impeachment
and placing the prosecutor's own credibility in issue, Edwards answered "No." The court then
refused to allow the State to prove up the allegedly prior inconsistent statement. In point twelve,
Green argues that the court erred when it allowed the prosecutor to inject his own personal
knowledge and opinion into the trial. He contends that the jury was placed in the position of
having to decide who was telling the truth—the prosecutor or Edwards.
          The credibility of any witness may be attacked, even by the party who called him. Tex.
R. Crim. Evid. 607. A witness' prior inconsistent statement is admissible for impeachment. Id.
at 612(a). Thus, the court did not err when it allowed the prosecutor to ask Edwards whether he
had made a prior inconsistent statement. See id. Assuming, however, that error occurred, Green
could hardly have been harmed by Edward's denial of any prior inconsistent statement, especially
when the State was never allowed to prove its alleged contents and in light of Green's own
admission that he and Edwards agreed to the robbery before they went to Westmoreland's house. 
Any error would have been harmless beyond a reasonable doubt. See Tex. R. App. P. 81(b)(2). 
Point twelve is overruled.
PUNISHMENT
          Green has several points relating to the punishment stage. His first complaint is that the
court erred when it refused to instruct the jury, as he requested, that it could not assess his
punishment by considering the law of parties. He relies on Green v. State, 682 S.W.2d 271, 287
n.4 (Tex. Crim. App. 1984), cert. denied, 470 U.S. 1034, 105 S.Ct. 1407, 84 L.Ed.2d 794
(1985), in which the court held that, although the jury is entitled to consider on punishment all of
the evidence adduced at the guilt phase, the court must nevertheless instruct the jury—if
requested—that it cannot consider the law of parties in assessing the death penalty. This is because
the issues the jury must answer in assessing punishment in a capital case focus solely on the
defendant's individual conduct, not that of a co-actor. Id. at 287; Tex. Code Crim. Proc. Ann.
art. 37.071(b), (e) (Vernon Supp. 1992). Thus, the instruction is necessary in a capital case to
expressly restrict the jury's view of the evidence to the defendant's own conduct. 
          Green argues that he is entitled to the same instruction in a non-capital case. Nothing in
article 37.07, relating to the punishment hearing in non-capital cases, restricts the jury's
consideration to the defendant's own conduct in assessing punishment. Tex. Code Crim. Proc.
Ann. art. 37.07 (Vernon 1981 & Supp. 1992). In fact, the jury has always been allowed to
consider all of the facts and circumstances surrounding a non-capital offense in assessing
punishment. Williams v. State, 535 S.W.2d 637, 639 (Tex. Crim. App. 1976). Green's requested
instruction, if given, would abrogate the general rule in a non-capital case without any statutory
imperative for doing so. We hold that he was not entitled to the instruction. Point thirteen is
overruled.
          At the beginning of the punishment phase, the State re-offered all of the evidence from the
guilt stage. Green objected to the State re-offering Nicholas Edward's testimony, including the
out-of-court statement used for impeachment, on the ground that the prosecutor then believed that
Edwards had testified falsely. (The prosecutor admitted at the hearing on the motion for a new
trial that he believed Edwards had lied). The court, however, overruled the objection to Edward's
testimony being re-offered on punishment and later denied the motion for a new trial containing
the same complaint.
          Green's fourteenth and fifteenth points are based on the contention that the court
improperly allowed the State to re-offer Edward's perjured testimony on punishment. Green
confuses the duty of a prosecutor not to knowingly offer perjured testimony and the admissibility
of testimony that, in hindsight, the prosecutor may not believe was entirely truthful. The record
does not reflect or even hint that the State knowingly offered perjured testimony.
          Evidence presented during the guilt stage is automatically before the jury on punishment
regardless of whether it is formally re-offered by the State. Wright v. State, 468 S.W.2d 422, 425
(Tex. Crim. App. 1971). Thus, the prosecutor's re-offering of evidence from the guilt phase had
no legal effect. Whether Edwards had testified truthfully or not was for the jury to determine, not
for the prosecutor, and the prosecutor's personal hindsight opinion of Edwards' credibility did not
make his testimony inadmissible on punishment. Points fourteen and fifteen are overruled.
          The court included this instruction in the charge on punishment without any objection from
Green:
Under the law applicable in this case, the defendant, if sentenced to a term of
imprisonment, may earn time off the period of incarceration imposed through the award
of good conduct time. Prison authorities may award good conduct time to a prisoner who
exhibits good behavior, diligence in carrying out prison work assignments, and attempts
at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take
away all or part of any good conduct time earned by the prisoner.

(Emphasis added). Article 37.07, section 4(a), requires the court to give this instruction in a
felony jury trial "if the offense of which the jury has found the defendant guilty is listed in Section
3g(a)(1), Article 42.12." Tex. Code Crim. Proc. Ann. arts. 37.07, § 4(a), 42.12, § 3g(a)(1)
(Vernon Supp. 1992). Aggravated robbery, the offense of which Green was convicted, is listed
in section 3g(a)(1)(D). See id. § 3g(a)(1)(D). 
          Green now contends the court erred when it gave the instruction because it conflicts with
section 8(c)(11) of article 42.18, which prohibits a person serving a sentence for aggravated
robbery from being released to mandatory supervision. See id. at art. 42.18, § 8(c)(11). Nor can
good-conduct time be considered in determining when a prisoner sentenced for aggravated robbery
is eligible for parole. Id. § 8(b)(3).
          Apparently, Green's concern is that the instruction misled the jury into believing that any
good-conduct time he might earn would be credited to his sentence when, having been convicted
of aggravated robbery, good conduct could not be considered in determining either his parole date
or his eligibility for mandatory supervision. This would have caused the jury, he apparently
argues, to increase his sentence to compensate for the good-conduct credit.
          Assuming that giving the instruction constituted an error in the charge, we must determine
whether it resulted in such egregious harm that Green did not receive a fair and impartial trial. 
See Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (on rehearing). This test is
used when the error in the charge is not objected to at trial. Id. The degree of harm is determined
by considering the entire charge, the weight of the probative evidence, the contested issues,
arguments of the parties, and any other relevant information revealed by the record. Id.
          Informing the jury of good-conduct time is now expressly permitted by the constitution. 
Tex. Const. art. IV, § 11(a). The instruction given by the court deals in possibilities, not
probabilities or absolutes. It merely informed the jury that prison authorities may give Green
good-conduct time if he earns it, but that he may lose it if he misbehaves. How one can be
egregiously harmed by such an instruction is not readily apparent. If the instruction could have
caused the jury to impose a heavier sentence than it would have otherwise to offset any good-time
credit, as Green argues, then that prospect is inherent in the instruction itself, regardless of
whether it is properly or improperly given. 
          Considering the record as a whole, the charge, the probative evidence, and the rather
moderate sentence assessed by the jury, we hold that giving the instruction in this instance, when
good-conduct time earned may have been of no benefit to Green, did not prevent him from
receiving a fair and impartial trial. See Almanza, 686 S.W.2d at 171. Points sixteen and
seventeen are overruled. 
          We affirm the judgment.
                                                                                 BOB L. THOMAS
                                                                                 Chief Justice
Before Chief Justice Thomas, 
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed September 9, 1992
Publish