In The


 

Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-282 CV


____________________



GRADY H. WOODS AND MONROE WOODS, Appellants



V.



MARY ELIZABETH WOODS, Appellee






On Appeal from the 1st District Court


Newton County, Texas


Trial Cause No. 11045






MEMORANDUM TO CLERK


 You are directed to make the following correction in the Opinion dated May 18, 2006:

 On page 13, on the first line on the page, after the word great, insert the word weight. 

 You will give notice of this correction in the original Opinion by sending a copy of
the corrected page accompanied by this memorandum to all interested parties who received
a copy of the original opinion.

 Entered this 14th day of June 2006.

 PER CURIAM

 In The


 

Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-282 CV


____________________



GRADY H. WOODS AND MONROE WOODS, Appellants



V.



MARY ELIZABETH WOODS, Appellee






On Appeal from the 1st District Court


Newton County, Texas


Trial Cause No. 11045






MEMORANDUM TO CLERK



 You are directed to make the following correction in the Opinion dated May 18, 2006:

 On page 9, on the first line on the page, change the second word from proprety to
property. 

 You will give notice of this correction in the original Opinion by sending a copy of
the corrected page accompanied by this memorandum to all interested parties who received
a copy of the original opinion.



 Entered this 18th day of May, 2006.

 PER CURIAM



 In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-282 CV


____________________



GRADY H. WOODS AND MONROE WOODS, Appellants



V.



MARY ELIZABETH WOODS, Appellee






On Appeal from the 1st District Court


Newton County, Texas


Trial Cause No. 11045






OPINION



 Grady H. Woods and Monroe Woods sued Mary Woods (1) for conversion of personal
property, and they sought partition of real property. See Tex. Prop. Code Ann. §§ 23.001-.006 (Vernon 2000 and Supp. 2005); Tex. R. Civ. P. 756-771, 776. Grady and Monroe
appeal the trial court's judgment which adopted a commissioners' report concerning the
partition of the real property and denied their conversion claim. We affirm the judgment.

 The Trial Court Proceedings


 The trial court signed an order setting out the interests of each party in the real
property and ordering its partition. See Tex. R. Civ. P. 760, 761. The order appointed
commissioners to effect the partition. See Tex. R. Civ. P. 761, 762. On April 30, 2002, the
commissioners filed their recommendation for the property's partition. See Tex. R. Civ. P.
769. The deadline for objecting to the commissioners' report was May 30, 2002. See Tex.
R. Civ. P. 771 (thirty days to file objections). Appellants filed their objections on July 15,
2002. The trial judge sent the parties a letter stating that "[i]n [his] opinion, when objections
were not filed in the 30 days, the parties are deemed to have accepted the Report." We do
not find in the clerk's record any motion by Grady or Monroe explaining the late filing. On
May 12, 2003, the trial court signed a judgment adopting the commissioners' report. 
However, the judgment did not dispose of the conversion claim.

 Three months later, the trial judge held a hearing to reconsider. Appellants' attorney
for the first time explained why he did not object timely to the commissioners' report. He
was unaware there was a time limit for objections; one client was working out of town in the
oil field; and one client did not have a telephone. Monroe testified he thought the
commissioners' report should not be accepted because he had invested a significant amount
of labor and money in improving the house on one of the tracts, and he felt that tract should
go to him. Grady agreed with Monroe's suggested division. Nevertheless, the trial court did
not vacate the judgment. 

 Grady and Monroe appealed. This Court dismissed the appeal because the 2003
judgment was not final without a disposition of appellants' conversion claim. See Woods v.
Woods, No. 09-03-400 CV, 2004 Tex. App. Lexis 3942 (Tex. App.--Beaumont April 29,
2004, no pet.). The parties then litigated the conversion action, and this appeal followed. (2) 

The Real Estate


 Appellants contend the trial court erred in accepting the commissioners' report. Mary
argues appellants waived any error concerning the report because they did not file objections
timely. Rule 771 provides that objections may be filed within thirty days of the date the
report is filed. If objections are filed, "a trial of the issues thereon shall be had as in other
cases." Tex. R. Civ. P. 771. 

 Appellee relies on Grimes v. Hall, 211 S.W.2d 956 (Tex. Civ. App.--Eastland 1948,
no writ). Grimes predates the 1990 amendment to Rule 771 which added the thirty-day time
limitation. Tex. R. Civ. P. 771 hist. n. Grimes objected to the commissioners' report for the
first time on appeal. The reviewing court held the objection was waived. Grimes, 211
S.W.2d at 958. Unlike Grimes, appellants filed objections with the trial court. They argue
Rule 771 does not state a penalty for filing objections late, and the trial court erred in
adopting the report. Texas Rule of Civil Procedure 5 provides in part as follows: 

 When by these rules . . . an act is required or allowed to be done at or within
a specified time, the court for cause shown may, at any time in its discretion
(a) with or without motion or notice, order the period enlarged if application
therefor is made before the expiration of the period originally prescribed or as
extended by a previous order; or (b) upon motion permit the act to be done
after the expiration of the specified period where good cause is shown for the
failure to act. 


Tex. R. Civ. P. 5. If a party files objections late, Rule 5(b) authorizes the trial court "upon
motion" to permit the late filing, if the movant shows good cause for the failure to act. Id. 
 The Texas Supreme Court cited Rule 5 in a case involving a late response to a motion
for summary judgment. See Carpenter v. Cimarron Hydrocarbons Corp., 98 S.W.3d 682
(Tex. 2002). There, the Court held that a trial judge should grant a party's motion for leave
to file a late summary judgment response when the party establishes good cause for the
failure to timely respond. Id. at 688. The Court noted the rules do not mandate a summary
judgment response, but a party who does not file a response faces the possibility of a
summary disposition without regard to the merits. Id. at 687. A party establishes good cause
in that context by showing (a) the failure to timely respond was not intentional or the result
of conscious indifference, but the result of an accident or mistake, and (b) allowing the late
response will occasion no undue delay or otherwise injure the party seeking a summary
judgment. Id. at 688. (3)

 Here, the trial judge held a hearing during which he heard argument from counsel
setting out reasons for the late filing of the objections and testimony from appellants about
the proper division of the property. The Conclusions of Law state, "The Plaintiffs' objection
to the Commissioner's report was not timely[;] therefore, the report of the Commissioners
became final." Based on the reconsideration hearing, the attorney's presentation of his
explanation for the late filing of objections, the findings of fact and conclusions of law
reciting the fact of the late filing, and the trial court's acceptance of the report, we conclude
the trial court considered appellants' explanation and implicitly determined appellants did
not establish good cause for the late filing. We review the trial court's implicit ruling under
an abuse of discretion standard, and apply the "good cause" principles articulated in
Carpenter. See id. at 686-88. 

 We look to the record to determine whether the failure to file timely objections was
an accident or mistake, and not the result of intentional disregard or conscious indifference. 
Trial counsel explained he had difficulty contacting his clients; though both Monroe and
Grady testified at the reconsideration hearing, neither explained his difficulty. Counsel also
offered a mistake of law excuse. He did not know of any deadline for filing objections to the
report. Some mistakes of law are sufficient to negate conscious indifference. Walker v.
Gutierrez, 111 S.W.3d 56, 64 (Tex. 2003). However, not every mistake of law is a sufficient
excuse, because otherwise "a party could, in any case, claim a mistake of law and be entitled
to relief." Id.; see also Bank One, Texas, N.A. v. Moody, 830 S.W.2d 81, 84 (Tex. 1992). 
A party who files suit on a claim governed by a statute is "charged with knowledge of the
statute and its requirements." Gutierrez, 111 S.W.3d at 64 (A claimant under former art.
4590i who filed an expert report that omitted a required element, under a purportedly
mistaken belief that the report complied with the statute, did not negate a finding of
intentional disregard or conscious indifference.). 

 Appellants did not file a written motion or present evidence of their excuses to the trial
court; they offered no explanation until the reconsideration hearing a year later. Even if we
assume the trial court could consider the attorney's argument alone in deciding whether
appellants established good cause, a lack of knowledge of Rule 771 is not a sufficient excuse. 
A partition of real estate is a special proceeding governed by particular rules of civil
procedure that describe what the petition must state, the court's role, and the roles of
surveyors and commissioners, among other things. See Tex. R. Civ. P. 756-771. Appellants
filed this partition proceeding and are charged with knowledge of the governing rules. 

 The trial judge's September 2002 letter put the parties on notice that the trial court
"deemed" the report "accepted." Later, the trial court permitted appellants to offer testimony
at the reconsideration hearing in support of their objections. Appellants offered no testimony
as to why the circumstances justified the late filing, and made no showing that allowing the
late objections would not cause undue delay or otherwise injure appellee. We do not find an
abuse of discretion by the trial court. 

 Appellants contend Rule 771 is facially unconstitutional. To prevail on their claim,
appellants bear the heavy burden of showing the rule has no possible valid application. See
In re Commitment of Fisher, 164 S.W.3d 637, 655 (Tex. 2005), cert. denied, __U.S.__, 126
S.Ct. 428, 163 L.Ed.2d 326 (2005). Appellants argue interpreting Rule 771 as requiring
acceptance of the commissioners' report when objections are filed late unconstitutionally
deprives them of property rights. Appellants did not raise this issue before the trial court. 
The rules regarding preservation of error generally apply to constitutional claims. See In re
K.A.F., 160 S.W.3d 923, 928 (Tex.), cert. denied, Carroll v. Faucheux, ___ U.S. ___, 126
S.Ct. 483, 163 L.Ed.2d 364 (2005); Dreyer v. Greene, 871 S.W.2d 697, 698 (Tex. 1993). (4) 
Even if appellants may raise this challenge for the first time on appeal, we are not persuaded. 
The rules do not "require" acceptance of a commissioners' report. In allowing objections and
setting a filing deadline, Rule 771 provides a means of challenging the implementation of the
partition and affords due process to a party who objects to the report. Rule 5 provides an
opportunity to show cause for the late filing of objections. See Tex. R. Civ. P. 5. Appellants
simply did not timely file their objections and did not meet their burden of establishing good
cause for the late filing. 

The Personal Property 
 

 In their final issue, appellants argue the trial court erred in not finding conversion. 
When a party attacks the factual sufficiency of an adverse finding on an issue on which that
party had the burden of proof, the party must demonstrate on appeal the adverse finding is
against the great weight and preponderance of the evidence. Dow Chem. Co. v. Francis, 46
S.W.3d 237, 242 (Tex. 2001). The reviewing court considers all the evidence and can set
aside a verdict only if the evidence is so weak or if the finding is so against the great weight
and preponderance of the evidence that it is clearly wrong and unjust. Id. (citing Pool v.
Ford Motor. Co., 715 S.W.2d 629, 635 (Tex. 1986)). 

 To recover on a conversion cause of action, a plaintiff must prove there was an
"unauthorized and wrongful assumption and exercise of dominion and control over the
personal property of another, to the exclusion of or inconsistent with the owner's rights[.]" 
Waisath v. Lack's Stores, Inc., 474 S.W.2d 444, 447 (Tex. 1971). Monroe testified he lived
from 1986 to late 1995 or 1996 on the 5.7- acre tract next to the land and home of his mother,
Mary. Monroe worked on automobiles on the property and sold automobile parts; there were
vehicle parts and approximately thirty-one vehicles in various states of disrepair on the tract. 
Monroe testified Mary told him she was going to have the cars and other personal property
removed if he did not remove them. From the time he moved off the property in late 1995
or 1996 until he filed suit against his mother in February 2000, he did not retrieve his
personal property; but he also indicated that before he filed suit he removed four vehicles
himself. He testified a welding machine was also on the property when he left; he says he
never received it back. Mary testified she knew of only one welding machine; she sold it,
but Monroe was so upset she bought it back and returned it to him.

 Jimmy Woods, Monroe's cousin, testified he lives across the street from Mary's
daughter, Frankie Williams, who lived on the 5.7-acre tract. Sometime within the three
months before the August 2005 hearing, Jimmy witnessed a car-crushing operation on the
land. The car-crushing operation involved an eighteen-wheeler which had a front-loader that
"went to crushing cars and stacking them." The operation took cars from Mary's land, as
well as the 5.7-acre tract. Jimmy Woods described the salvage process as follows:

 It was a big 18-wheeler setting in the road . . . right in front of her house. . .
And a little bit they unloaded the big front end loader off the truck. . . . Went
up yonder behind Frankie's house and got a bunch of old trucks and cars and
crushed them and stacked them about four high, loaded them on that 18-wheeler. It was all leaning; and they left . . . and left the loader setting there.
And then later on after dark, I heard the loader roaring; and I could see the
little old building, portable building, being moved around. . . . The next
morning it was gone. 


Jimmy testified, "I don't see how she [Mary] couldn't knew it. They went around her house
and got her vehicles . . . ." 

 Mary testified there were many vehicles on the tract -- Monroe's and hers. "And we
had every car or truck we ever drove. When we quit driving it or it needed repair, we parked
it up there. . . . And we just left it[.]" She explained that at some point between the time her
husband died and Monroe filed suit, Monroe brought flatbed trailers, took a front-end loader,
mashed cars two and three deep, carried them to Beaumont, and sold them. Mary estimated
Monroe took about three trailer loads away. 

 Mary testified that after Monroe moved, she asked him to remove the remaining
fifteen or twenty vehicles. She stated, "He removed the Mustangs that he wanted, but the rest
of them he said he didn't want." Mary maintained she did not tell Monroe she would remove
the vehicles if he failed to do so. She testified he was still removing vehicles after he filed
suit. Once the trial court awarded the 5.7- acre tract to her, Monroe never asked her to allow
him to remove his personal property. She acknowledged that, aside from the vehicles
Monroe had removed from the property himself, she and others had a salvage crew remove
everything else from the property approximately two months before the hearing. She
testified she received $300 for her own vehicles that were removed from the land on which
her home is located. She testified she did not talk to anyone from the salvage company 
about removing any property from the 5.7-acres. 

 Also on the 5.7-acre tract was a storage building that belonged to Monroe. Mary
described the salvage company's efforts to move it:

 It was tried to be moved and it just crumbled. . . . . And it had been raining in
and leaking in that building all this time. It rotted down; and whenever they
went to move it, it just crumbled. . . . [They] raked [the debris] up and burned
it. 


Mary testified she authorized them to get rid of it; "[I]t was a pile of trash." 


 Q. [Appellants' Attorney]. Whatever was there you authorized them to
remove it off the property?

 A. [Mary]. Yes, sir.

 Q. Including the properties that were behind Frankie's mobile home?

 A. Yes, sir, because I had received it, I thought, in the property settlement. 
 Would you want 20 or 30 rusty cars on your property? 


Mary later corrected herself. She said she only disposed of "what was mine," and she only
authorized the company to take property at her house, not on the 5.7 acres. She explained
Monroe's storage building was to be moved, not disposed of, but when the salvage people
tried to move the building, it crumbled. Mary testified she did not contact the salvage
company. She testified, "They just stopped there and said that's what they wanted, and I told
them to go ahead and take mine." 

 Frankie Williams, Mary's daughter, testified she has resided on the 5.7-acre tract since
1997. She acknowledged she was responsible for the salvage company cleaning up the
property after her cow was injured on rusted car parts. Frankie told the people from the
salvage company that she wanted everything removed. The salvage company agreed to pay
her $300. She testified Mary Woods did not call the company. Frankie asked the people
from the salvage company if they would move the building, and they attempted to do so. 
However, when the man "hooked up to it, . . . it just . . . fell apart, fell to pieces." She
disputed Monroe's account of the number of cars and parts on the property. 

 The trial judge as factfinder was the sole judge of the witnesses' credibility and the
weight to be given their testimony. See City of Keller v. Wilson, 168 S.W.3d 802, 819 (Tex.
2005). The factfinder "may choose to believe one witness and disbelieve another. 
Reviewing courts cannot impose their own opinions to the contrary." Id. (footnotes omitted).
We have considered all the evidence. The evidence is conflicting, and the judge was free to
resolve the conflicts. Based on Mary's and Frankie's testimony, the judge reasonably could
have determined Monroe abandoned some or all of the cars that were his, or Frankie rather
than Mary exercised authority or control over any property that was Monroe's and had it
removed. The trial court reasonably may have concluded Monroe failed to prove
compensable damages caused by Mary. See generally United Mobile Networks, L.P. v.
Deaton, 939 S.W.2d 146, 148 (Tex. 1997) (failure to prove conversion damages). The
failure to find conversion and award damages against Mary is not so against the great weight
and preponderance of the evidence as to be clearly wrong and unjust. See generally Dow
Chem. Co., 46 S.W.3d at 242 (standard of review). 

 Appellants' issues are overruled. The judgment is affirmed. 

 AFFIRMED. 


 _________________________________

 DAVID GAULTNEY

 Justice


Submitted on March 9, 2006

Opinion Delivered May 18, 2006 


 Before McKeithen, C.J., Gaultney and Kreger, JJ.

1. Grady and Monroe are half brothers. Mary is Monroe's mother. 
2. Appellants have withdrawn their first appellate issue. 
3. We recognize that in Wheeler v. Green, 157 S.W.3d 439, 443 (Tex. 2005), the
Supreme Court raised a due process consideration because the trial court had, in effect, used
deemed discovery admissions as a sanction, thereby precluding presentation of the merits. 
This case does not involve a sanction for failure to respond to a discovery request. The filing
of objections to the commissioners' report is what triggers the trial; without objections being
filed to a commissioners' report, no "trial of the issues" is anticipated by the Rule. See Tex.
R. Civ. P. 771. 
4. Appellants also argue the rule is unconstitutional as applied. They did not present
this issue to the trial court and it is not preserved. See In re Commitment of Fisher, 164
S.W.3d at 656 (The trial court should be given an opportunity to rule on an "as applied"
issue.); see also In re K.A.F., 160 S.W.3d at 928.