# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00768-CV

**Tau Kappa Epsilon and Adam Wilson Fomby, Appellants**

**v.**

**USA Bus Charter, Inc., Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
NO. D-1-GN-10-002807, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Complaining of numerous problems related to buses chartered for their transport to and from the annual "Texas-OU weekend" festivities in Dallas, appellants—Tau Kappa Epsilon (TKE), a fraternal social organization alleged to be affiliated with the University of Texas, and Adam Wilson Fomby, a fraternity member who had secured the buses—sued the bus company, appellee USA Bus Charter, Inc. (USA Bus), and ultimately obtained a no-answer default judgment awarding them damages. Subsequently, the district court granted USA Bus's motion for new trial and set aside the default judgment, then granted the company's motion to compel arbitration and dismissed the suit. Appellants contend that the district court abused its discretion with respect to both rulings. We disagree, and will affirm the district court's judgment.

**BACKGROUND**

It is undisputed that in July 2008, appellant Fomby,[1] as "special events coordinator" for TKE, executed a "charter contract and service agreement" with USA Bus whereby the bus company was to provide transportation services that included driving a large group to and from Dallas on October 10-12, 2008—the weekend of the annual Texas-OU football game—in two 112-passenger "deluxe motorcoaches." The contract specified a total price of $5,880.00 for the services, with a deposit of $500.00 required to confirm the reservation and the remaining balance due in September. Although appellants later alleged that these contract prices exceeded a $4,900 total that USA Bus had previously quoted them, Fomby paid the deposit on his credit card and subsequently wrote a personal check in September for the balance remaining due. However, during the week immediately before the scheduled trip, USA Bus, invoking a contract provision purporting to authorize it to increase confirmed prices to reflect "order discrepancies" or changes in market or regulatory conditions, requested that appellants sign a contract amendment requiring payment of an additional $1,020.00 by October 9 and pay that amount. On October 8, Fomby signed the amendment "under protest" and arranged for the additional payment.[2]

Although the game itself would be a success— with the 'Horns defeating the Sooners in a thrilling 45-35 shootout between the two undefeated, top-five nationally ranked teams, a win

---

[1] Fomby's counsel of record also has the surname of Fomby (the record does not indicate whether or how the two are related). Lest there be any confusion, we use "Fomby" solely to refer to *appellant* Fomby. Although some of these references concern actions by counsel Fomby during this litigation as agent and legal representative for appellant Fomby, our references are not intended to refer to counsel individually.

[2] It appears that this additional payment was charged to another fraternity member's credit card.

that catapulted the 'Horns to a #1 ranking for a few weeks[3]—appellants' chartered transportation to and from the game, they would later allege, was a debacle. In August 2010, they sued USA Bus, asserting claims under the Texas Deceptive Trade Practices Act. Appellants alleged "false, misleading, and deceptive acts or practices" and "unconscionable actions" by USA Bus that included misleading them and taking unfair advantage in regard to pricing increases; providing buses "that were hours late . . . preventing the fraternity members and their guests from arriving in Dallas in time to fully enjoy the traditional pre-game activities"; providing buses that contained less than the 112 seats specified in the contract, necessitating that the fraternity make expenditures to rent "a last-minute van" to transport passengers who could not fit on the buses (and, even worse for Fomby, necessitating that he drive that van, "forcing [him] to forego full enjoyment of the trip in order to drive and be responsible for the passengers"); and providing "drivers that did not speak English," had not been instructed regarding directions to the destinations in their itinerary, "and did not even know that the route from Austin to Dallas is via Interstate Highway 35," "forcing members of the fraternity to serve as translators and navigators instead of enjoying the various activities on the bus with their friends and dates." Appellants further alleged that following their return to Austin, USA Bus attempted to impose additional charges based on false accusations that they had damaged a bus bathroom, then changed its story to falsely allege a damaged seat when confronted with contrary evidence. Appellants prayed for actual damages, additional damages, and attorney's fees.

---

[3] MackBrown-TexasFootball.com, *No. 5 Texas stops No. 1 Oklahoma in Dallas, 45-35*, Oct. 11, 2008, http://www.texassports.com/sports/m-footbl/recaps/101108aab.html; *see* MackBrown-TexasFootball.com, *Texas takes top spot in AP poll*, Oct. 12, 2008, http://www.texassports.com/sports/m-footbl/spec-rel/101208aaa.html.

USA Bus is a foreign corporation with a principal place of business in Arizona, and there is no dispute that appellants properly served the company through the Secretary of State, which received the citation on August 16 and forwarded it to USA Bus. The citation was eventually received on September 3 by the company's corporate counsel, Russell Wenk, who is licensed to practice law in Arizona but not in Texas. Appellants assert, and USA Bus does not dispute, that USA Bus's answer was due on September 6. After USA Bus did not answer by that deadline, or during the week afterward, appellants proceeded to take a default judgment as to liability on September 15. On the following day, appellants obtained a final default judgment awarding them $14,900 in economic damages and $59,900 for mental anguish, which were trebled, plus $32,000 in attorney's fees, for a total of $256,000 exclusive of court costs and interest.

After receiving notice of the default judgment, USA Bus, through newly retained Texas counsel, moved to abate the action for referral to arbitration pursuant to provisions in its contract with appellants and to dismiss the suit. Contemporaneously with this motion, and subject to it, USA Bus filed a verified answer and plea in abatement. Thereafter, USA Bus timely filed a motion for new trial that purported to establish the three *Craddock* elements. *See Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939). USA Bus attached evidence that included an affidavit from Wenk, who testified concerning the circumstances of the company's failure to timely answer the suit. It subsequently filed a supplemental affidavit from Wenk. Appellants did not file any evidence in response. A hearing on both sets of motions was held on October 18, at which neither side presented additional evidence. The district court granted

USA Bus's motion for new trial and set aside the default judgment. It then proceeded to address the arbitration motion, granted it, and dismissed the suit.

This appeal ensued.

## ANALYSIS

**Motion for new trial**

In their first of three issues on appeal, appellants contend that the district court abused its discretion in granting USA Bus's motion for new trial. In general, trial courts have broad discretion in ruling on motions for new trial. *Limestone Constr., Inc. v. Summit Commercial Indus. Props., Inc.*, 143 S.W.3d 538, 542 (Tex. App.—Austin 2004, no pet.). However, a trial court abuses its discretion if it denies a motion for new trial to set aside a no-answer default judgment where the movant has satisfied the three-element test of *Craddock. Director, State Employees Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex. 1994); *Old Republic Ins. Co. v. Scott*, 873 S.W.2d 381, 382 (Tex. 1994) (per curiam). That is, the default judgment must be set aside and a new trial ordered when it is shown that: (1) the defendant's failure to answer before judgment was not intentional or the result of conscious indifference on his part, but was due to a mistake or an accident; (2) the defendant sets up a meritorious defense; and (3) the defendant's motion for new trial is filed at a time when the granting thereof will not result in delay or otherwise injure the plaintiff. *See Evans*, 889 S.W.2d at 268; *Strackbein v. Prewitt*, 671 S.W.2d 37, 38-39 (Tex. 1984); *Craddock*, 133 S.W.2d at 126. Appellants do not claim an abuse of discretion in regard to whether USA Bus met the third *Craddock* element, but contest the first two.

5

As to the first *Craddock* element, "intentional or the result of conscious indifference" denotes "that the defendant knew it was sued but *did not care*." *Fidelity & Guar. Ins. Co. v. Drewery Constr. Co.*, 186 S.W.3d 571, 575-76 (Tex. 2006) (per curiam) (emphasis added). This is more than mere negligence. *Levine v. Shackelford, Melton & McKinley, L.L.P.*, 248 S.W.3d 166, 168 (Tex. 2008) (per curiam). "An excuse need not be a good one to suffice." *Fidelity & Guar. Ins. Co.*, 186 S.W.3d at 76.

As proof that its failure to answer was not intentional or the result of conscious indifference, USA Bus relied in part on affidavit testimony of Wenk, its Arizona-based corporate counsel, that Arizona procedural rules required ten days' advance notice prior to taking a default judgment,[4] and that he did not receive any advance notice of appellants' intent to take a default. Wenk further averred that after receiving the pleadings on September 3, he had discussed them with his client and, on September 14, had faxed appellants a letter responding to the pleading allegations. The letter, a copy of which was attached to Wenk's first affidavit, stated the company's legal position in opposition to the suit, but also communicated a settlement offer. In concluding the letter, Wenk requested, "If you are not willing to dismiss this lawsuit, please advise me immediately so that a Motion to Dismiss can be immediately filed." Under all of these circumstances, Wenk further averred, "it was my belief that after Plaintiffs' counsel was notified of representation by Defendants, Plaintiffs' counsel would at least contact me PRIOR to filing any default as requested." As it turned out, appellants moved for default judgment on the day after Wenk faxed the September 14 letter.

---

[4] *See* Ariz. R. Civ. P. 55(a).

Appellants, as previously noted, did not present any evidence to controvert these facts.[5] Instead, they argue, in substance, that the facts presented, taken as true, did not establish an absence of conscious indifference as a matter of law. They first downplay the significance of Wenk's September 14 letter, observing that he did not transmit it until eight days after what they assert was USA Bus's answer date. As for Wenk's confusion about Arizona versus Texas procedural requirements related to default judgments, appellants insist that Wenk's affidavits fall short because they do not explain the basis for his belief that Texas law was the same as Arizona's or identify any legal research that he performed to determine when the answer was due under Texas law. Therefore, appellants conclude, Wenk has failed to negate that he acted with conscious indifference to the requirements of Texas law. *See Butler v. Dal Tex Mach. & Tool Co.,*

---

[5] On the other hand, appellants do complain that the district court violated their rights under the Fourteenth Amendment to the federal constitution by "preventing" them from presenting evidence and argument in opposition to USA Bus's motion for new trial. In support, appellants reference an exchange during the hearing that occurred while their counsel was presenting argument regarding Wenk's affidavits. During this presentation, counsel requested to approach the bench, and the court declined the request. The record does not further reveal the circumstances of the request beyond the fact that the evidence then under discussion—Wenk's affidavits—was already before the district court. *See Director, State Employees Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex. 1994) (affidavits attached to a motion for new trial do not have to be offered into evidence). Appellants further complain that the district court "arbitrarily and without warning interrupted [their] arguments within just three minutes" with an inquiry regarding the amount of attorney's fees they had incurred in obtaining their default judgment. After appellants' counsel responded to that question, the district court asked, "Anything else you want me to know?" Appellants' counsel then resumed his argument. Even if appellants have correctly characterized the record, at no point did appellants object or otherwise preserve any complaints regarding the claimed exclusion of evidence or curtailment of argument—rooted in constitutional rights or otherwise—nor can we ascertain from the record that appellants even voiced a desire to present additional evidence or argument. We hold that appellants have waived these complaints. *See* Tex. R. Civ. P. 33.1(a); *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993) (constitutional claim must have been asserted in the trial court to be raised on appeal).

7

*Inc.*, 627 S.W.2d 258, 260 (Tex. App.—Fort Worth 1982, no writ) (holding that trial court did not abuse its discretion in refusing to grant new trial to a defendant who received citation, did not understand it, and did nothing until after default judgment was taken). Moreover, appellants note, Arizona's rule 55, by its own terms, applies "only to a default sought and entered pursuant to this rule." Ariz. R. Civ. P. 55(a)(4). Appellants urge that a trained and licensed attorney who assumes that an Arizona rule applies to a Texas suit or that the Texas rules function similarly to Arizona's "is guilty of either laziness, incompetence, or malpractice," particularly where the rule states that its application is limited to defaults taken under the Arizona rule.

USA Bus, on the other hand, argues that Wenk's mistake of law—believing that Arizona rule of procedure 55 applied to the Texas suit—constitutes legally sufficient evidence that USA Bus did not intentionally disregard the lawsuit or act with conscious indifference. A mistake of law may negate intentional or consciously indifferent conduct. *Bank One Texas, N.A. v. Moody*, 830 S.W.2d 81, 84 (Tex. 1992). However, the Texas Supreme Court has held that not every mistake of law is a sufficient excuse. *Walker v. Gutierrez*, 111 S.W.3d 56, 63 (Tex. 2003) (citing *Bank One Tex., N.A.*, 830 S.W.2d at 84); *see Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992) (defendant did not answer because it did not believe it could possibly be liable); *Carey Crutcher, Inc. v. Mid-Coast Diesel Servs., Inc.*, 725 S.W.2d 500, 502 (Tex. App.—Corpus Christi 1987, no writ) (defendant's attorney believed bankruptcy stay that applied to an entity that was not his client meant that his client was protected from having to answer by the bankruptcy stay); *First Nat'l Bank of Bryan v. Peterson*, 709 S.W.2d 276, 279 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (in response to writ of garnishment, bank froze accounts but did not submit funds

to the court or file an answer); *Butler*, 627 S.W.2d at 260 (party did not understand citation; did nothing). But when a defendant presents evidence that it performed actions that it believed sufficient to properly respond to the suit, courts have usually held that the mistake of law suffices to negate conscious indifference. *See In re R.R.*, 209 S.W.3d 112, 115 (Tex. 2006) (per curiam) (defendant did not act with conscious indifference when, based on prior involvement with child protective services, she did not answer suit because she mistakenly believed that an attorney would be appointed to respond to termination suit automatically); *Bank One Tex., N.A.*, 830 S.W.2d at 84 (defendant bank did not act with intent or conscious indifference where it believed that freezing accounts and tendering the balance of the accounts to the clerk issuing the writ was a sufficient response); *Angelo v. Champion Rest. Equip. Co.*, 713 S.W.2d 96, 97 (Tex. 1986) (belief that paying the underlying claim was a sufficient answer negated intent or conscious indifference); *Texas State Bd. of Pharmacy v. Martinez*, 658 S.W.2d 277, 280-81 (Tex. App.—Corpus Christi 1983, writ ref'd n.r.e.) (mistaken belief that exclusive venue rested in county other than county of suit negated intent or conscious indifference).

In determining whether USA Bus acted with intentional disregard or conscious indifference, "we must look to the knowledge and acts of the defendant." *Strackbein*, 671 S.W.2d at 39. Within eleven days of receiving the citation from the Secretary of State, Wenk faxed an offer of settlement to appellants.[6] Wenk indicated in his settlement letter that the parties' contract contained a choice-of-law clause specifying that Arizona law would apply. He testified in his

---

[6] Appellants' counsel asserts that he did not receive the settlement offer because it was faxed to an office that he did not visit in the interim between the time the letter was faxed on September 14 and when he obtained the final default judgment for appellants on September 16.

affidavits that the settlement offer and the fact that Arizona rule of civil procedure 55 provides defendants with a right to notice before a default judgment led him to believe that appellants would not obtain a default without first contacting USA Bus in some manner. Because appellants, again, did not present evidence to controvert Wenk's affidavits, and because no other evidence in the record controverts Wenk's affidavits, the district court could properly grant the motion for new trial if the affidavits "set forth facts which, if true, would negate intentional or consciously indifferent conduct." *Strackbein*, 671 S.W.2d at 38-39. The facts asserted in Wenk's affidavits would establish that, rather than being consciously indifferent to the consequences of the lawsuit filed against his client, he responded in a manner that he believed would not result in a default judgment. *Levine*, 248 S.W.3d at 160 (conscious indifference amounts to more than mere negligence). Under the circumstances, we cannot conclude that the district court abused its discretion in determining that USA Bus demonstrated that its failure to answer was not the result of intentional disregard or conscious indifference.

A defendant satisfies the second *Craddock* element if it presents evidence that "sets up" a meritorious defense. *Ivy v. Carrell*, 407 S.W.2d 212, 214 (Tex. 1966). The defendant need not prove its defense, but its motion for new trial must allege facts that in law would constitute a defense to the plaintiff's cause of action, and the motion must be supported by evidence proving prima facie that the defendant has such a meritorious defense. *Id.* A meritorious defense is one which, "if true and unexplained, would change the result on a subsequent trial." *Morris v. Morris*, 717 S.W.2d 189, 190 (Tex. App.—Austin 1986, no writ) (quoting *Holliday v. Holliday*, 10 S.W. 690, 692 (1889)) (internal quotation marks omitted). Once a meritorious defense is set up,

10

"controverting evidence offered by the nonmovant should not be considered." *Dolgencorp v. Lerma*, 288 S.W.3d 922, 928 (Tex. 2009).

To satisfy the meritorious defense element, USA Bus presented a copy of its contract with appellants and its October 2008 amendment whereby Fomby, "under protest," agreed to additional charges. USA Bus argues that the contract suffices as prima facie proof of a meritorious defense in at least two ways. First, its asserts that a comparison of appellants' pleading allegations and the contract reveals that all of appellants' complaints sound in the contract. *See Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 12-14 (Tex. 1996) (per curiam) (mere nonperformance of a contract not actionable under the DTPA). Second, USA Bus points out that the contract itself contains provisions that facially appear to authorize some of the very conduct of which appellants complain (e.g., the provision allowing price increases in light of changes in market conditions, as well as an indemnity clause). We agree that district court did not abuse its discretion in determining that USA Bus had set up a meritorious defense. We overrule appellants' first issue.

**Arbitration**

Appellants do not dispute that their contract with USA Bus contained forum-selection provisions that included an arbitration clause governed by the Federal Arbitration Act:

> 18.   Governing Law
> The Agreement and its performance shall be governed by the laws of the state of Arizona, United States of America without giving effect to applicable conflict of law provisions[.]  The Chartering Party (for itself and on behalf of the Passengers) consents to the exclusive jurisdiction of the state and federal courts and arbitration panels located in Maricopa County, the state of Arizona, United States of America, to resolve all questions, controversies or claims arising out of this Agreement or the service provided hereunder[.]

19. Arbitration

In the event a dispute shall arise between the parties to this Agreement, it is hereby agreed that the dispute shall be referred to the American Arbitration Association for three-person arbitration in Maricopa County, Arizona, in accordance with its applicable Rules of Arbitration[.] The arbitrators' decisions shall be final and legally binding and judgment may be entered thereon[.] Each party shall be responsible for its share of the arbitration fees. In the event a party fails to proceed with arbitration, unsuccessfully challenges the arbitrators' award or fails to comply with the arbitrators' award, the other party is entitled to costs of suit, including reasonable attorney's fee for having to compel arbitration or defend or enforce the award[.]

However, in their second issue, appellants contend that the district court abused its discretion in compelling arbitration because their contract with USA Bus was illusory or unconscionable and, therefore, unenforceable.

Whether a valid arbitration agreement exists—a threshold question of contract formation—is a legal question that we review de novo. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006). Although common-law contract defenses may be relevant to this inquiry, defenses that pertain to the underlying contract, but do not relate specifically to the arbitration agreement, must be arbitrated. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 647-48 (Tex. 2009); *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967)).

A promise is illusory if it does not bind the promisor, such as when the promisor retains the option to discontinue performance. *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2009). An arbitration clause is not illusory unless one party can avoid its promise to arbitrate by amending or terminating the arbitration provision. *Id.* Appellants assert that their contract with USA Bus was illusory because the October contract amendment demonstrated that USA Bus did not feel obligated

12

to perform under the terms of the contract, such that there was no mutual consideration. Even if so, appellants' assertions are a broad "challenge to the entire contract, either on a ground that directly affects the entire agreement, or on the ground that one of the contract's provisions is illegal and renders the whole contract invalid," and thus are for the arbitrator. *In re Labatt Food Serv., L.P.*, 279 S.W.3d at 647-48.

Appellants' argument that the contract is unconscionable is also based on USA Bus's demand for additional payment through the contract amendment, which they cast as an attempt to "extort an additional thousand dollars from TKE at the very last minute, when TKE had no choice but to comply." Although unconscionable agreements are unenforceable, *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 892 (Tex. 2010), the determination of whether a contract as a whole—rather than its arbitration clause specifically—is unconscionable is a broad challenge to the contract that must be arbitrated, *In re Labatt Food Serv., L.P.*, 279 S.W.3d at 647-48. Consequently, appellants' unconscionability arguments, like their other complaints, are for the arbitrator. We overrule appellants' second issue.

**. . . in Arizona**

In addition to its contract-formation arguments in opposition to arbitration generally, appellants bring a third issue in which they complain specifically that the district court abused its discretion in enforcing the contractual requirements that the arbitration be conducted in Maricopa County, Arizona, under Arizona law. They assert in part that these requirements cannot be enforced because they were fraudulently induced into their contract with USA Bus. These arguments fail for the same reasons as their unconscionability and illusory-contract complaints. *In re Lyon Fin.*

13

*Servs.*, 257 S.W.3d at 232 ("fraudulent inducement to sign an agreement containing a . . . forum-selection clause will not bar enforcement of the clause unless the specific clause was the product of fraud or coercion"). Moreover, appellants have presented no evidence—or even pleaded any facts—that could be construed to support a claim for fraudulent inducement.

Appellants further urge that their DTPA claims should be heard in Texas by a court because it would be unjust and against public policy to force them to proceed in Arizona under Arizona law, which has very different consumer protection laws. *See* Ariz. Rev. Stat. Ann. §§ 44.1521-.1534 (2011). The Texas Supreme Court has rejected the argument that DTPA claims should not be subject to arbitration. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992) (where claims arose out of contract, the arguments that DTPA claims were outside the scope of an arbitration clause or that the DTPA's nonwaiver provision applied were "without merit"). The supreme court has also held that the inability to assert a claim recognized by Texas law in another state "does not create a public policy reason to deny enforcement of the forum-selection clause." *In re Lyon Fin. Servs.*, 257 S.W.3d at 234 (contract specified Pennsylvania law and Pennsylvania as the forum); *see In re International Profit Assocs., Inc.*, 286 S.W.3d 921, 924 (Tex. 2009) (conditionally granting mandamus relief to enforce choice of Illinois as the forum and Illinois law as the governing law). We also note that although appellants complain of the Arizona choice-of-law provision, that provision is not part of the arbitration agreement. Therefore, a determination of whether that provision is enforceable is, like the enforceability of the rest of the contract, a matter that must be submitted to arbitration.

In a related complaint, appellants argue that the district court should have stayed the suit rather than dismissing it. A stay is "generally the only appropriate order for a state court with jurisdiction of all the issues." *In re Gulf Exploration, LLC*, 289 S.W.3d 836, 841 (Tex. 2009) (noting that a party may not appeal an order compelling arbitration if the suit is stayed, but may appeal if the suit is dismissed). But when all of the issues raised in the district court must be submitted to arbitration, it is appropriate for the district court to dismiss the suit. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). That is the case here, as the text of the arbitration agreement plainly encompasses all of appellants' claims. We overrule appellants' third issue.

**CONCLUSION**

Having overruled each of appellants' issues, we affirm the district court's judgment.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed: July 28, 2011

15