In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00026-CV


______________________________




DIAGNOSTIC CLINIC OF LONGVIEW, P.A. AND


COMPLETECARE COMPREHENSIVE HEALTHCARE

SOLUTIONS, L.P., Appellants


V.



NEUROMETRIX, INC., Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 2007-2357-B




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Moseley



O P I N I O N



 Neurometrix, Inc., filed suit against Diagnostic Clinic of Longview, P.A. (DCOL) and
Completecare Comprehensive Healthcare Solutions, L.P., over a debt incurred in the sale and
purchase of medical testing equipment. After no answer was filed by either defendant, Neurometrix
was awarded a default judgment. DCOL and Completecare have appealed the trial court's denial of
their timely-filed motion for new trial.

I. Statement of Facts

 Completecare acts as the purchasing agent for DCOL and others in the medical profession. 
In doing so, Completecare acts as something of a wholesaler, purchasing equipment wanted by its
clients and passing it along to the client as well as managing the inventories of its clients, including
DCOL. Under this arrangement, Completecare purchased an NC-Stat Nerve Conduction Monitoring
System and its accouterments for the sum of $26,302.59 from Neurometrix for use by DCOL;
Completecare was to then sell the machine to DCOL. The purpose of this machine was to screen
patients to determine whether it was advisable to conduct an electomyography (EMG) examination
(a more comprehensive but more expensive procedure than that done by the monitoring system). 
However, the insurance billing codes for the monitoring system interfered with the insurance billing
codes for the use of an EMG; the result was that if the insurance companies were billed for use of
the nerve conduction monitoring system, they would often then decline to pay for the more
comprehensive and expensive but more profitable EMG test.

 Completecare maintained that the possible interference with billing procedures was discussed
in the negotiations about the purchase of the nerve conduction monitoring system and that
Neurometrix's salesman had assured Completecare that this would not be a problem; it was their
contention that the salesman had promised a thirty-day trial grace period after the monitoring system
had begun being used before Completecare was obligated to purchase. After the insurance billing
problems arose, representatives of Completecare spoke with both the in-house legal counsel for
Neurometrix and with an attorney in the Dallas area (who had been retained as outside counsel by
Neurometrix to collect before Ronnie Horsley was engaged) regarding the problems which had been
encountered and the representations which had been made. Following one of these conversations,
Robert Wheeler, Jr., Completecare's president, indicated that the first outside counsel for
Neurometrix agreed to present an offer to remedy the situation to Neurometrix and to remain in
contact with Completecare in an effort to effect a resolution of the dispute. However, Neurometrix
retained a different attorney, Horsley, who filed a suit on a sworn account on October 18, 2007,
against both Completecare and DCOL.

 Completecare first became aware that a lawsuit had been filed because news of its filing was
published in the local newspaper. DCOL, who had not signed the purchase agreement, left any
negotiations concerning the dispute up to Wheeler to handle. Upon learning of the lawsuit, Wheeler
then contacted Horsley and related the content of the prior conversations and the offers of settlement
he had discussed with both Neurometrix's in-house counsel and the first outside counsel retained by
Neurometrix. Horsley said he was unaware of these conversations and would speak with
Neurometrix about the matter. Horsley, however, never made contact after that time with Wheeler
or other representatives of Completecare or DCOL.

 Wheeler, though not being willing to state that Horsley specifically made such
representations to him, said that after his conversation with Horsley, he operated under the
impression that it was not necessary to file a response to the lawsuit because negotiations were still
being conducted. Thereafter, both Completecare and DCOL were properly served with citation, but
neither filed any answer. Neurometrix was granted a default judgment against them both.

 After both DCOL and Completecare received notice of the entry of default judgment from
the clerk of the court, they filed a motion for new trial. After a hearing, no order was entered and
the motion was deemed denied by operation of law. 

II. Standard of Review--Abuse of Discretion

 The standard of review for the trial court's ruling on a motion for new trial is abuse of
discretion. Under an abuse of discretion standard, the court of appeals cannot overrule the trial
court's decision unless the trial court acted unreasonably or in an arbitrary manner, without reference
to guiding rules or principles. Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991). 
Moreover, the court of appeals cannot substitute its judgment for the trial court's reasonable
judgment, even if it would have reached a contrary conclusion. Walker v. Packer, 827 S.W.2d 833,
839-40 (Tex. 1992); Buller, 806 S.W.2d at 226. The trial court does not abuse its discretion if some
evidence reasonably supports the trial court's decision. Butnaru v. Ford Motor Co., 84 S.W.3d 198,
204 (Tex. 2002).

 For many years, the courts have recognized a three-part test to determine whether a trial court
has abused its discretion in its refusal to grant a new trial after entry of a default judgment. 
Craddock v. Sunshine Bus Lines, Inc., 134 Tex. 388, 133 S.W.2d 124, 126 (1939). Under the
Craddock test, 

 [a] default judgment should be set aside and a new trial ordered in any case in which
the failure of the defendant to answer before judgment was not intentional, or the
result of conscious indifference on his part, but was due to a mistake or an accident;
provided the motion for a new trial sets up a meritorious defense and is filed at a time
when the granting thereof will occasion no delay or otherwise work an injury to the
plaintiff.


Id.

 Conscious indifference has been defined as "the failure to take some action which would
seem indicated to a person of reasonable sensibilities under the same or similar circumstances." 
Young v. Kirsch, 814 S.W.2d 77, 81 (Tex. App.--San Antonio 1991, no writ). "The accident or
mistake segment is only considered when, on the facts of a particular case, an accident or mistake
may negate intentional or consciously indifferent conduct. See, e.g., Strackbein v. Prewitt, 671
S.W.2d 37, 38-39 (Tex. 1984); State Farm Life Ins. Co. v. Mosharaf, 794 S.W.2d 578, 584 (Tex.
App.--Houston [1st Dist.] 1990, writ denied); Guardsman Life Ins. Co. v. Andrade, 745 S.W.2d
404, 405 (Tex. App.--Houston [1st Dist.] 1987, writ denied)." Bank One, Tex., N.A. v. Moody, 830
S.W.2d 81, 84 (Tex. 1992). 

 As for showing accident or mistake, a defaulting party must provide "some excuse, though
not necessarily a good excuse," for having failed to timely file an answer or to make an appearance. 
Comanche Nation v. Fox, 128 S.W.3d 745, 750 (Tex. App.--Austin 2004, no pet.). Even in
circumstances where the failure to properly file a timely answer was due to negligence, it is proper
to grant a new trial if there is no intentional disregard and a lack of conscious indifference is not
shown. Gen. Life & Accident Ins. Co. v. Higginbotham, 817 S.W.2d 830, 832 (Tex. App.--Fort
Worth 1991, writ denied). 

 It should also be taken into account that it "is a basic tenet of jurisprudence that the law
abhors a default because equity is rarely served by a default." Titan Indem. Co. v. Old S. Ins. Group,
Inc., 221 S.W.3d 703, 708 (Tex. App.--San Antonio 2006, no pet.).

III. Discussion

 Neurometrix concedes that in the affidavits attached to their motion for new trial, both DCOL
and Completecare established the existence of prima facie meritorious defenses. Also in their
motion for new trial (which was reiterated by their counsel during the hearing on that motion), these
same parties expressed their willingness to pay all reasonable expenses incurred by Neurometrix in
obtaining the default judgment; the parties seemed to have agreed during the hearing on that motion
that a reasonable fee was $1,000.00. 

 Here, DCOL and Completecare based their reason for not having filed a timely response upon
the mistaken belief that ongoing conversations and settlement negotiations existed with
Neurometrix's counsel and that no action would be taken toward default while those discussions
were taking place. In support of this position, they provided the testimony of Wheeler concerning
the content of the discussions in which he had engaged with Neurometrix's house counsel, the first
retained counsel, and Horsley as recited above. (1) Because these excuses stem from the attempts of
both Completecare and DCOL to resolve the litigation, it appears that the failure of either to timely
file an answer was not a result of conscious indifference. Although the conclusion at which Wheeler
arrived in thinking that it was not necessary to file an answer for Completecare and DCOL in order
to forestall a default may have been extraordinarily unwise, it did not amount to either willful
disregard or conscious indifference of the requirement to file a written response.

IV. Conclusion

 Since both Completecare and DCOL provided excuses to the trial court as to why they failed
to file a timely answer, and since the evidence shows that the failure to respond was not due to
conscious indifference, we have no alternative other than to find that Completecare and DCOL met
all three requirements of the Craddock test.

 We reverse the judgment and remand the case to the trial court for a new trial.




 Bailey C. Moseley

 Justice


Date Submitted: July 14, 2008

Date Decided: July 15, 2008


1. Bert Ratay, Chief Executive Officer of DCOL, testified that Completecare, not DCOL, had
purchased the machine and that he had left the negotiations regarding it to Wheeler. Ratay also
testified that based on what Wheeler had told him, there was to be no judgment entered against
DCOL so long as negotiations were taking place with Neurometrix.