

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-16-00020-CV

_____


ACTION POWERSPORTS, INC., D/B/A
WELLS CYCLE, INC., AND CARL M. WELLS, Appellants

V.

1STEL, INC., Appellee


On Appeal from the 413th District Court
Johnson County, Texas
Trial Court No. C201300332


Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Moseley

OPINION

After Action Powersports, Inc., d/b/a Wells Cycle, Inc. (Action), ceased paying the monthly invoices for its telephone system, 1STEL, Inc. (1STEL), filed suit against Action and its President, Carl Wells (Wells). 1STEL asserted a cause of action for breach of contract against Action and Wells, individually, on its Master Service Agreement for Communications Services (the Agreement), and against Wells, individually, for breach of the payment guaranty contained in the Agreement. Although Action and Wells answered the lawsuit, they failed to appear at trial, and the 413th Judicial District Court of Johnson County[1] entered a post-answer default judgment in favor of 1STEL. On appeal, Action and Wells complain that the trial court erred (1) in entering judgment against Wells, individually, for breaching the payment guaranty, and (2) in failing to set a hearing on their motion for new trial and allowing the same to be overruled as a matter of law. We find no error by the trial court and affirm its judgment.

## I.  Background

On or about December 6, 2011, Action entered into the Agreement with 1STEL to install a telephone system at its place of business in Ennis and to provide telephone and internet services for a term of five years. The Agreement included the following clauses:

> 13.  Governing Law and Exclusive Venue
> This Agreement shall be construed under the laws of the State of Texas without regard to choice of law principles. Customer further agrees that exclusive venue with respect to any dispute between the parties shall be in the state and federal courts of Johnson County, Texas.

---

[1]Originally appealed to the Tenth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Tenth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

2

. . . .

18.   Guaranty
The undersigned hereby (1) personally guarantees all obligations of Customer regarding payment for Services and all other amounts owed hereunder, and (2) agrees to be bound by the governing law and exclusive venue provision in Section 13 hereof.

The signature line indicates that the company entering into the Agreement is Action, and is signed by Wells. Beneath his signature, Wells' name is hand-printed and below that, his title of "President" is hand-printed.

In May 2012, Action stopped paying its monthly invoice for services provided by 1STEL. Under the terms of the Agreement, on July 12, 2012, 1STEL sent Action a final bill for $38,680.99, which included unpaid invoices and non-recurring charges. After Action failed to pay the final bill, 1STEL filed suit on July 23, 2013.

An original answer to the suit was filed on behalf of Action and Wells by their attorney, Don A. Young, on September 26, 2013. Young died October 7, 2014, and no other attorney thereafter entered an appearance on behalf of Action or Wells. When the attorney for 1STEL learned in May 2015 of Young's demise, he sent a letter directly to Action and Wells wherein he reminded them that the case was still pending and requested that they have another attorney enter an appearance on their behalf. When no attorney entered an appearance on their behalf, 1STEL's attorney sent a follow-up letter to Action and Wells July 31, 2015, advising them that he was requesting a status conference hearing in light of Young's death. On August 25, 2015, 1STEL's attorney mailed notice to Action and Wells, advising them that the requested status conference hearing would be held September 9, 2015. Despite this action by lSTEL's attorney, neither Action,

3

nor Wells, nor an attorney representing either attended the hearing. At that hearing, 1STEL's attorney advised the court that he had spoken with Wells, who informed him that he (Wells) was talking to some attorneys. 1STEL also introduced its attorney's correspondence with Action and Wells concerning the need for the defendants to retain new counsel. The trial court entered an order September 10, 2015, directing Action and Wells to have an attorney enter an appearance on their behalf on or before October 9, 2015. By letter dated September 10, 2015, 1STEL's attorney mailed Action and Wells a copy of that order by United States Postal Service certified mail and by regular mail. The receipt for the certified mail was signed by Wells.

Even so, no attorney appeared on behalf of Action and Wells, and by letter dated October 14, 2015, 1STEL's attorney sent Action and Wells notice that a final hearing had been set in the case for December 15, 2015, sending it by certified mail. Wells signed the return receipt for the notice on October 16, 2015. Neither Action nor Wells appeared at the final hearing (either personally or by counsel). The trial court entered its judgment in favor of 1STEL on its breach of contract claims,[2] wherein it awarded ISTEL judgment jointly and severally against Action and Wells, for $45,154.93, together with attorney fees of $3,087.50, costs of court, and post-judgment interest.

Action and Wells filed a verified motion for a new trial. In their motion, Action and Wells alleged that their attorney had died October 7, 2014, and that no attorney had made an appearance on their behalf after that time. Although they acknowledged having received communications from 1STEL's attorney, they laid the cause of their lack of response to the fact that they had

---

[2]In their briefs, both parties interpret the judgment against Wells as a judgment for his breach of the payment guaranty.

4

received no notice from the trial court itself. They did not deny receiving notice of the final hearing, but alleged that they were not aware that a hearing could be set without notice from the trial court or its clerk and that their failure to appear was because they were not aware the trial court had approved the trial date. They also alleged that they had meritorious defenses of offset and failure of performance by 1STEL and that Wells did not personally guarantee payment under the Agreement. Finally, they alleged that a new trial would neither cause delay to nor prejudice 1STEL.

1STEL's objection to the motion for new trial was supported by the affidavit of its president. 1STEL alleged that Action and Wells had received multiple notices regarding the case and directed the attention of the trial court to the exhibits introduced at the final hearing evidencing its attorney's efforts to encourage them to retain a new attorney, notices sent to them regarding the scheduling of the status conference hearing and the order resulting from it, and the notice of final hearing received by Wells. Although Action and Wells filed a response they did not controvert any of the allegations made, or evidence presented, by 1STEL. Although Action and Wells requested a hearing on their motion, no hearing was held, and the motion was overruled as a matter of law.

## II. Wells' Personal Liability

In their first point of error,[3] Action and Wells assert that the trial court erred in entering judgment against Wells, individually, because the petition on its face shows the invalidity of the claim against him in his individual capacity. He argues that the Agreement shows that he executed

---

[3]The first point of error applies only to Wells.

it only in his capacity as president of Action (not in his individual capacity) and that since the Agreement was incorporated into the petition, the petition on its face shows that the claim against him individually on the guaranty of payment was invalid.[4]  Wells also argues that there is no evidence to show that he is liable in his individual capacity.  1STEL argues first that Wells waived this point of error under Rule 33.1 of the Texas Rules of Appellate Procedure.  It then argues that even if he had not waived the point of error, the Agreement shows him to be personally liable under the guaranty of payment as a matter of law.

## III.     Lack of Waiver

Initially, we address 1STEL's claim of waiver.  It argues that because Wells failed to assert in any trial-level pleading before judgment that he was not personally liable, he has preserved nothing for our review under Rule 33.1 of the appellate rules.  However, Rule 33.1 provides that "[i]n a civil case, the overruling by operation of law of a motion for new trial or a motion to modify the judgment preserves for appellate review a complaint properly made in the motion, unless taking evidence was necessary to properly present the complaint in the trial court."  TEX. R. APP. P. 33.1(b).  In this case, Wells asserted his defense that he was not personally liable in his motion for new trial, a motion which was overruled by operation of law.  As we address below, this defense could be determined as a matter of law, so no taking of evidence was necessary to present it to the trial court.  Thus, this error was preserved for our review under the appellate rules.

---

[4]A default judgment may be erroneous "if (1) the petition . . . does not attempt to state a cause of action within the jurisdiction of the court, or (2) the petition . . . does not give fair notice to the defendant of the claim asserted, or (3) the petition affirmatively discloses the invalidity of such claim." *Stoner v. Thompson*, 578 S.W.2d 679, 684–85 (Tex, 1979); *see McLeod v. Gyr*, 439 S.W.3d 639, 651 (Tex. App.—Dallas 2014, pet. denied).

### A.      Standard of Review

Wells' assertion that there is no evidence supporting his individual liability amounts to a challenge to the legal sufficiency of the evidence. In our legal sufficiency review, we determine "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Petrohawk Props.*, *L.P. v. Jones*, 455 S.W.3d 753, 770 (Tex. App.—Texarkana 2015, pet. dism'd) (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Basley v. Adoni Holdings, LLC*, 373 S.W.3d 577, 582 (Tex. App.—Texarkana 2012, no pet.)). We will find that the evidence is legally insufficient only if

> (1) there is a complete absence of evidence of a vital fact; (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact; (3) there is no more than a mere scintilla of evidence offered to prove a vital fact; or (4) the opposite of the vital fact is conclusively established by the evidence.

*Id.* (citing *Jelinek v. Casas*, 328 S.W.3d 526, 532 (Tex. 2010)). There is more than a scintilla of evidence "when the evidence reaches a level enabling reasonable and fair-minded people to differ in their conclusions." *Id.* (citing *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id.* (quoting *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983))).

It is undisputed that the only evidence of Wells' individual liability is the Agreement. In addition, the Agreement is the basis of Wells' argument that the petition shows on its face that 1STEL's claim against him is invalid. Therefore, the resolution of this point of error requires us

7

to construe the Agreement. "The construction of an unambiguous contract is a question of law which we review de novo." *Id.* at 765 (citing *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011)). If the wording of a contract can be given "a certain or definite legal meaning or interpretation," it is not ambiguous. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). When the contract is unambiguous, "the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls." *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex. 1968). "A contract is not ambiguous simply because the parties disagree over its meaning." *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009). Only when a contract's "meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation" is it deemed ambiguous. *Craig Sessions, M.D., P.A. v. TH Healthcare, Ltd.*, 412 S.W.3d 738, 743 (Tex. App.—Texarkana 2013, no pet.) (quoting *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)). In construing a contract, "we assume the parties intended 'every clause to have some effect and in some measure to evidence their agreement.'" *Petrohawk Props.*, 455 S.W.3d at 775 (quoting *City of Pinehurst*, 432 S.W.2d at 518).

### B. Analysis

Several of our sister courts of appeals have construed language similar to that found in the Agreement to make the corporate signatory personally liable under a guaranty agreement contained in a credit application. *See 84 Lumber Co., L.P. v. Powers*, 393 S.W.3d 299 (Tex. App.—Houston [1st Dist.] 2012, pet denied); *Taylor–Made Hose, Inc. v. Wilkerson*, 21 S.W.3d 484 (Tex. App.—San Antonio 2000, pet. denied); *Austin Hardwoods, Inc. v. Vanden Berghe*, 917

S.W.2d 320 (Tex. App.—El Paso 1995, writ denied). In *Wilkerson*, Wilkerson signed an application for a credit account with Taylor-Made on behalf of North American Transit, Inc. Beside her signature, it indicated that she was vice-president of the company. Above her signature was a provision stating, "I, [sic] personally agree to pay all invoices and cost of collection including, but not limited to[,] collections agency fees, court costs, and reasonable attorney's fees on any amount remaining unpaid after 90 days." *Wilkerson*, 21 S.W.3d at 486. After the company failed to pay its account and filed for bankruptcy, Taylor-Made filed suit against Wilkerson on the guaranty agreement. *Id.* at 486–87. After summary judgment was entered in favor of Taylor-Made, Wilkerson appealed, asserting that there was no evidence that she was individually liable for the debt and that there was no evidence that the contract was enforceable against her since there was no writing signed by her in her individual capacity. *Id.* at 487. Taylor-Made argued that the credit application itself established Wilkerson's liability. *Id.* The San Antonio Court of Appeals agreed with Taylor-Made, finding that under the unambiguous language of the guaranty contract, Wilkerson had personally agreed to pay the company's delinquent account and that she "made herself personally liable for the corporation's debt." *Id.* at 488.

Similarly, in *84 Lumber Co.*, Powers signed a credit application on behalf of his corporation as its president. Above his signature, a paragraph provided, "I DO UNCONDITIONALLY AND IRREVOCABLY PERSONALLY GUARANTEE THIS CREDIT ACCOUNT AND []ENTS OF ANY AND ALL AMOUNTS DUE BY THE ABOVE BUSINESS." *84 Lumber Co.*, 393 S.W.3d at 302. The Houston Court of Appeals reversed a summary judgment in favor of Powers and rendered judgment for 84 Lumber, finding that, notwithstanding the missing language, the contract

9

was clear and unambiguous and that by signing the contract Powers had created his individual liability for the debt of the corporation. *Id.* at 305, 308.

As in *Wilkerson* and *84 Lumber Co.*, Wells signed the Agreement on behalf of Action as its president. This was required in order to bind the corporation to the Agreement. Under the Agreement, Action was obligated to pay all invoices for the services rendered by 1STEL for a period of five years. If it defaulted on payment of the invoices, it would also be obligated for additional charges as provided in the Agreement. Section 18 of the Agreement also provides that by signing the Agreement, Wells "personally guarantee[d] all obligations of [Action] regarding payment for Services and all other amounts owed [t]hereunder." The purpose of the guaranty was to secure any debt owed by Action. *See Vince Poscente Int'l, Inc. v. Compass Bank*, 460 S.W.3d 211, 219 (Tex. App.—Dallas 2015, no pet.). Under Wells' interpretation, Action would be guaranteeing its own debt, which would render this provision meaningless. Further, Section 18 also states that "the undersigned . . . . agrees to be bound by the governing law and exclusive venue provision in Section 13 hereof." In Section 13, Action agreed that Texas law would be controlling and venue of any dispute between the parties would be in the courts of Johnson County, Texas. Since "we assume the parties intended 'every clause to have some effect and in some measure to evidence their agreement,'" *Petrohawk Props.*, 455 S.W.3d at 775 (quoting *City of Pinehurst*, 432 S.W.2d at 518), this section clearly evidences that Wells, individually, was agreeing to be bound by the governing law and venue provisions in any dispute between Wells and 1STEL. Likewise, Section 18 clearly and unambiguously provides that Wells, individually, guaranteed the payment of any amounts owed by Action under the Agreement.

10

Since the Agreement was attached to the original petition, we find that the petition did not show on its face the invalidity of 1STEL's claim against Wells. Further, since the Agreement was introduced into evidence at the final hearing, we find that sufficient evidence supported the trial court's judgment against Wells individually. We overrule this point of error.

## IV.    Motion for A New Trial

In their second point of error, Action and Wells assert that the trial court erred in failing to conduct a hearing on their motion for new trial, thereby allowing their motion to be overruled as a matter of law. They argue that their verified motion for new trial established the *Craddock*[5] requirements for a new trial after default judgment and therefore that the trial court was required to have a hearing on its motion and to grant a new trial. We disagree.

### A.    Standard of Review

We review the denial of a motion for new trial under an abuse-of-discretion standard. *Director, State Employees Workers' Compensation Div. v. Evans*, 889 S.W.2d 266, 268 (Tex. 1994). After a default judgment, the "trial court abuses its discretion by not granting a new trial when all three elements of the *Craddock* test are met." *Id.* (citing *Bank One, Tex., N.A. v. Moody*, 830 S.W.2d 81, 85 (Tex. 1992)). *Craddock* provides that a new trial should be granted after a default judgment when

> [1] the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident; [2] provided the motion for a new trial sets up a meritorious defense and [3] is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff.

---

[5]*See Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939).

11

*Id.* (quoting *Craddock*, 133 S.W.2d at 126). The *Craddock* requirements are applicable to post-answer default judgments. *Id.*; *Ivy v. Carrell*, 407 S.W.2d 212, 214 (Tex. 1966).

The defaulting party has the burden of setting forth facts establishing all three elements of the *Craddock* test. *Scenic Mountain Med. Ctr. v. Castillo*, 162 S.W.3d 587, 590 (Tex. App.—El Paso 2005, no pet.). When no hearing is held, we look to the motion for new trial and any accompanying affidavits to determine if this burden is met. *See In re Marriage of Woods*, No. 06-13-00123-CV, 2014 WL 4437795 (Tex. App.—Texarkana Apr. 25, 2014, no pet.) (mem. op.). If the motion and accompanying affidavits fail to establish any prong of the *Craddock* test, then the trial court's denial of a new trial will be upheld. *See Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992); *Ivy*, 407 S.W.2d at 215.

**B.      Analysis**

*Craddock* requires that the motion for new trial set up a meritorious defense. We determine here whether Action and Wells met this burden "based on the facts alleged in the motion and the supporting affidavit, regardless of whether those facts are controverted." *Woods*, 2014 WL 4437795, at *4 (citing *Evans*, 889 S.W.2d at 270). Setting up a meritorious defense "means '[t]he motion must allege *facts* which in law would constitute a defense to the cause of action asserted by the plaintiff, and must be supported by affidavits or other evidence proving prima facie that the defendant has such meritorious defense.'" *Estate of Pollack v. McMurrey*, 858 S.W.2d 388, 392 (Tex. 1993) (quoting *Ivy*, 407 S.W.2d at 214). This is required "to prevent the reopening of cases to try out fictitious or unmeritorious defenses." *Ivy*, 407 S.W.2d at 214. Therefore, "conclusory

12

allegations are insufficient." *Heine*, 835 S.W.2d at 82 (citing *Folsom Invs., Inc. v. Troutz*, 632 S.W.2d 872, 875 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.)).

In their motion for new trial, Action and Wells alleged

> 8. The Plaintiff's cause of action is based upon a Contract alleged to have been breached by the Defendants and to this cause of action the Defendants can and do set up a meritorious defense as follows: [Action] alleges that it is entitled to offsets for any claims presented by the Plaintiff in that the Plaintiff did not provide the services as promised. [Wells] alleges that he is not responsible in his individual capacity as he did not provide any personal guarantee of the Contract.

The only other allegation in their motion relevant to a claimed meritorious defense was that the Agreement was not signed by Wells in his individual capacity. Action and Wells filed no supporting affidavits, although Wells verified under oath that the statements contained in the motion for new trial were within his personal knowledge and that they were true and correct.

As we have previously discussed, the Agreement established that Wells provided a personal guarantee and was liable in his individual capacity. Therefore, the motion for new trial set up no meritorious defense for Wells. Further, the allegations that Action is entitled to offsets and that 1STEL failed to provide the promised services are conclusory. There are no facts alleged showing what services 1STEL failed to provide or establishing that Action was entitled to an offset. Therefore, the motion did not set up a meritorious defense for Action. Since the motion for new trial did not contain allegations of fact that constituted a meritorious defense for either Action or Wells, we find that the trial court did not err in overruling the motion for new trial. *See Ivy*, 407 S.W.2d at 215. We overrule this point of error.

13

We affirm the judgment of the trial court.


Bailey C. Moseley
Justice

Date Submitted:     August 2, 2016
Date Decided:       August 5, 2016