**Opinion filed August 8, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-17-00235-CV

_____

## RONALD DWAYNE MEADOR, Appellant

## V.

## WANDA KAY MEADOR, Appellee

**On Appeal from the 220th District Court**
**Comanche County, Texas**
**Trial Court Cause No. DV02117**

## M E M O R A N D U M   O P I N I O N

Appellant, Ronald Dwayne Meador, appeals from a no-answer default final decree of divorce. Appellant presents a sole issue on appeal—he contends that the trial court erred by failing to grant a new trial because he satisfied all three elements of *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124 (Tex. 1939). We affirm.

*Background Facts*

Appellant and Appellee, Wanda Kay Meador, married in 2004 and separated in 2010. Approximately seven years after they separated, Appellee filed for divorce. Appellant was served with citation on March 9, 2017, but did not file an answer.

On May 18, 2017, the trial court held a final hearing on Appellee's petition for divorce. Appellant did not appear at the hearing. After hearing testimony from Appellee, the trial court granted Appellee's petition for divorce, divided the marital property and debt, named Appellant and Appellee the joint managing conservators of their child, determined that Appellant's possession of the child would be by the agreement of the parties, and ordered Appellant to pay child support to Appellee. In the final decree of divorce, the trial court found that Appellant, "although duly and properly cited, did not appear and wholly made default."

Appellant timely filed a motion for new trial. As relevant to this appeal, Appellant asserted that he did not file an answer to the divorce petition because he and Appellee were discussing how to resolve the divorce. After an evidentiary hearing, the trial court denied the motion for new trial.

*Analysis*

We review a trial court's decision to deny a motion for new trial under an abuse of discretion standard. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009) (per curiam). In the case of a default judgment, a trial court abuses its discretion by not granting a new trial when the defendant establishes all three elements of the *Craddock* test. *Id.*; *Dir., State Emps. Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex. 1994).

*Craddock* provides that a new trial should be granted when (1) the defendant's failure to answer or to appear was not intentional or the result of conscious indifference, but was due to a mistake or an accident; (2) the motion for new trial sets up a meritorious defense; and (3) the granting of a new trial will not cause delay

2

or otherwise injure the plaintiff. *Craddock*, 133 S.W.2d at 126; *see also Milestone Operating, Inc. v. ExxonMobil Corp.*, 388 S.W.3d 307, 309 (Tex. 2012) (per curiam). The defendant has the burden of proving all three elements. *Action Powersports, Inc. v. 1STEL, Inc.*, 500 S.W.3d 632, 639–40 (Tex. App.—Texarkana 2016, no pet.).

We turn first to whether Appellant established that his failure to answer was not intentional or the result of conscious indifference. "Failing to file an answer intentionally or due to conscious indifference means 'the defendant knew [he] was sued but did not care.'" *In re R.R.*, 209 S.W.3d 112, 115 (Tex. 2006) (per curiam) (quoting *Fid. & Guar. Ins. Co. v. Drewery Constr. Co.*, 186 S.W.3d 571, 575–76 (Tex. 2006) (per curiam)). When determining whether the defendant's failure to file an answer was intentional or due to conscious indifference, we consider the knowledge and acts of the defendant. *Milestone Operating*, 388 S.W.3d at 309. More than mere negligence is required. *Smith v. Babcock & Wilcox Constr. Co.*, 913 S.W.2d 467, 468 (Tex. 1995) (per curiam). "The absence of an intentional failure to answer rather than a real excuse for not answering is the controlling fact." *Milestone Operating*, 388 S.W.3d at 310 (citing *Craddock*, 133 S.W.2d at 125). Generally, some excuse, although not necessarily a good one, "will suffice to show that a defendant's failure to file an answer was not because the defendant did not care." *In re R.R.*, 209 S.W.3d at 115.

A defendant satisfies his burden as to the first *Craddock* element when his factual assertions, if true, negate intentional or consciously indifferent conduct by the defendant and those factual allegations are not controverted by the plaintiff. *Sutherland v. Spencer*, 376 S.W.3d 752, 755 (Tex. 2012). However, when the plaintiff controverts the defendant's factual assertions, the issue becomes a fact question for the trial court to determine. *Lynch v. Lynch*, 540 S.W.3d 107, 122 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). The trial court, as the factfinder, must

determine the "true facts surrounding the default circumstances." *Roman v. Ramirez*, 573 S.W.3d 341, 352 (Tex. App.—El Paso 2019, pet. denied) (quoting *Harmon Truck Lines, Inc. v. Steele*, 836 S.W.2d 262, 265 (Tex. App.—Texarkana 1992, writ dism'd)). "As the sole judge of the credibility of the witnesses and the weight to be given to their testimony, the trial court may choose to believe all, none, or part of a witness's testimony." *Utz v. McKenzie*, 397 S.W.3d 273, 279 (Tex. App.—Dallas 2013, no pet.) (quoting *Stein v. Meachum*, 748 S.W.2d 516, 517 (Tex. App.—Dallas 1988, no writ)).

In his affidavit filed in support of the motion for new trial,[1] Appellant asserted that, because of his and Appellee's "ability to communicate and discuss the divorce and what [they] wanted to do," he "chose not to hire an attorney." He also stated that he "was not consciously indifferent in [his] lack of filing an answer" because he believed, based on his "pattern of communication" with Appellee and their "prior history of communication," that they would resolve the "situation" amicably.

At the hearing on the motion for new trial, Appellant testified that he and Appellee communicated by e-mail about the divorce. Although these communications were "sporadic," "[m]ost of them were clumped together in one grouping" in which Appellee told Appellant "how she wanted [the] marital property to be divided" and requested that he provide values for certain property so that they could "divide that equitably." According to Appellant, he did not hire an attorney because he thought that they were "in [Appellee's] description, going to come to a resolution that did not require a court trial." Appellant testified that, although Appellee never stated that she would reach an agreement about the division of the

---

[1]At the hearing on the motion for new trial, the trial court took judicial notice of its entire file, including Appellant's affidavit filed in support of the motion for new trial and Appellee's affidavit filed in support of her response, and indicated that it would take the affidavits into consideration.

marital property, he took her statements "as implication" that they would come to an agreement on the division of property.

Appellant also relied on his e-mail communications with Appellee between March 27, 2017, and April 10, 2017, to support his contention that the parties were attempting to reach an agreement as to the division of the marital property. As relevant here, on April 4, 2017, the parties discussed Appellant's attempts to sell a boat. Appellee insisted that the boat could not be sold due to the pending divorce proceeding and had to "be divided." She then told Appellant that her attorney was drawing up the "finalized divorce papers." Appellant responded that he would look at the "proposed final decree" but thought that it was "in [his] best interest to retain the services of an attorney to protect [his] interests in case there is a dispute and we need to go to court." The parties ultimately agreed that, if Appellant sold the boat, the money would be used to pay off the note on "Lacy's Jeep" and to purchase "Tabbie" a vehicle.

On April 10, 2017, Appellee sent an e-mail to Appellant that contained a list of certain assets and debts. Appellee requested that Appellant provide values for certain assets and proposed a division of certain assets. However, Appellee did not include on the list all the assets ultimately divided by the trial court, did not propose a division of all the parties' debts, and did not address custody or child support issues. Appellant testified that he responded to the e-mail, but that response is not in the record.

In an affidavit attached to her response to the motion for new trial, Appellee stated that she never "assured [Appellant] that he and I would come to an agreement on the terms of our divorce" and that she did not "dissuade him" from hiring his own attorney. Appellee asserted that she and Appellant did not communicate "particularly well" and that their communication was sporadic after they separated. According to Appellee, on approximately April 10, 2017, her discussions with

5

Appellant "regarding property and debt trailed off," and they "stopped talking about the divorce." On April 21, 2017, Appellee asked her attorney to set the case for a final hearing so that she "could get divorced."

Negotiating a settlement agreement may be a valid excuse for failing to file an answer. *See Diagnostic Clinic of Longview, P.A. v. Neurometrix, Inc.*, 260 S.W.3d 201, 205 (Tex. App.—Texarkana 2008, no pet.). Specifically, a defendant may establish a lack of conscious indifference through evidence that statements made during settlement negotiations caused him to believe that no default judgment would be taken while the discussions were taking place. *Id.* at 205 & n.1 (noting that the parties' settlement negotiations included that "there was to be no judgment entered . . . so long as negotiations were taking place"); *Gotcher v. Barnett*, 757 S.W.2d 398, 402 (Tex. App.—Houston [14th Dist.] 1988, no writ) (concluding that settlement negotiations were a valid excuse for failing to file an answer when, based on settlement negotiations, the defendant believed that the plaintiff would dismiss the lawsuit).

Here, there was evidence of discussions between Appellant and Appellee over the value of certain assets, Appellant's attempt to sell the boat, and how the money from any sale of the boat should be distributed. However, there was no evidence that the parties engaged in any type of negotiations that would resolve all issues relating to the division of the marital estate, custody of the parties' child, and child support.

Further, Appellant produced no evidence of any statement by Appellee that would give Appellant a reason to believe that Appellee would not take a default judgment. In fact, after Appellee indicated that her attorney was preparing a final divorce decree, Appellant stated that he was considering retaining counsel to protect his interests. There was no evidence that Appellee either indicated that Appellant did not need to hire counsel because the parties intended to settle the dispute or

attempted to dissuade Appellant from hiring his own counsel. Finally, Appellee waited over a month after the parties stopped communicating about the division of the marital property before she took the default judgment, giving Appellant ample time to file an answer after the discussions ended.

In short, there was evidence that Appellant did not file an answer even though he knew that he had been sued, that he considered hiring a lawyer to protect his interests, and that he stopped negotiating with Appellee about the division of the marital property. There is no evidence that Appellant had reason to believe that Appellee would not take a default judgment. Under these circumstances, the trial court could have properly found that Appellant's failure to file an answer was intentional or due to conscious indifference. *See Utz*, 397 S.W.3d at 280 (concluding that, because the appellant's affidavit regarding existence of settlement negotiations was controverted, "the issue of whether appellant's conduct was intentional or consciously indifferent was a question for the trial court"); *Pentes Design, Inc. v. Perez*, 840 S.W.2d 75, 79 (Tex. App.—Corpus Christi 1992, writ denied) ("Pentes' conclusory allegation that the lawsuit was being 'resolved on a semi-informal basis,' together with the exhibits supposedly supporting this allegation, shows no indication of settlement or other excuse for [the] failure to answer as required."). Because Appellant failed to establish the first element of the *Craddock* test, the trial court did not abuse its discretion by denying the motion for new trial. *See Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992) (concluding trial court did not abuse its discretion by denying motion for new trial because, based on the evidence before it, it could have concluded that the defendant's failure to answer was intentional or due to conscious indifference).

In light of our conclusion with respect to the first *Craddock* element, we need not address whether Appellant satisfied the second and third elements. *See id*.; *see also* TEX. R. APP. P. 47.1. We overrule Appellant's sole issue on appeal.

7

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


August 8, 2019

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[2]

Willson, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.